UNITED STATES of America,
Appellant,

v.

Russell H. WOGAN,
Defendant, Appellee.

No. 91–1214.

United States Court of Appeals,
First Circuit.

Heard June 5, 1991.

Decided July 18, 1991.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., was on brief, Portland, Me., for appellant.

William W. McCandless, Jr., by appointment of the Court, Gorham, Me., for defendant, appellee.

Before SELYA and CYR, Circuit Judges, and KEETON,* District Judge.

SELYA, Circuit Judge.

In this criminal appeal, the government contends that there were no valid grounds for departing below the guideline sentencing range (GSR). We agree. Hence, we vacate the sentence and remand for resentencing.

*Background*

Defendant-appellee Russell H. Wogan and a codefendant, Daniel J. Casale, were charged with possession of heroin with in-

* Of the District of Massachusetts, sitting by desig-  nation.

tent to distribute, distribution of heroin, and conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846 and 18 U.S.C. § 2. The record shows that Wogan and Casale were joint venturers in the classic sense: the level and extent of their participation was, to all intents and purposes, approximately the same. On September 5, 1990, Casale pled guilty to all three counts of the indictment. On September 26, Wogan followed suit.

The codefendants were sentenced separately. At Casale's sentencing hearing, held on November 21, 1990, the district judge took evidence. Although all parties agree that the government acted in good faith, it was nevertheless slipshod in building a record. On the evidence as presented, the judge found as a fact that only 10.19 grams of heroin were includable within the scope of defendant's "relevant conduct." U.S.S.G. § 1B1.3(a); *see generally United States v. Sklar*, 920 F.2d 107, 110 (1st Cir.1990) (explicating concept of "relevant conduct"); *United States v. Blanco*, 888 F.2d 907, 909-11 (1st Cir.1989) (explicating mechanical operation of concept). The judge therefore fixed the base offense level at 16, *see* U.S.S.G. § 2D1.1(c)(14) (Drug Quantity Table) (establishing base offense level at 16 where includable conduct implicates "[a]t least 10 G but less than 20 G of heroin"); deducted two levels for acceptance of responsibility, U.S.S.G. § 3E1.1(a); determined that Casale was in criminal history category III; computed the GSR to be 21-27 months, *see* U.S.S.G. Ch. 5, Pt. A (Sentencing Table); and sentenced Casale to 27 months in prison.

On January 3, 1991, Wogan's sentencing hearing was convened. The government took greater pains to build an adequate record. When the hearing ended, the judge reserved decision. Three weeks later, he found as a fact that the amount of heroin actually involved in the codefendants' relevant conduct was not 10.19 grams, but 755.75 grams. Premised on this finding, the judge fixed the base offense level at 30, *see* U.S.S.G. § 2D1.1(c)(7) (Drug Quantity Table) (establishing base offense level at 30 where includable conduct implicates "[a]t least 700 G but less than 1 KG of heroin");

deducted two levels for acceptance of responsibility; determined that Wogan was in criminal history category II; computed the GSR to be 87-108 months, *see* U.S.S.G. Ch. 5, Pt. A (Sentencing Table); and then opted to depart downward. The court grounded the downward departure on "considerations of fairness," expressing the viewpoint that

> to sentence two defendants in the same case, guilty of essentially of the same conduct, the same facts, to sentences as disparate as 27 months in one case and 108 months in another case, ... frustrates and violates ... the underlying concept of the eradication of disparity that is contemplated by the Guidelines, and ... the Court is justified in departing ... in order to obviate and to avoid that effect.

Consequently, the court sentenced Wogan to a 27-month term of imprisonment, thereby achieving parity between Wogan and Casale.

The judgment of the district court was entered on January 25, 1991. The government filed a timely notice of appeal. We have jurisdiction pursuant to 18 U.S.C. § 3742(b)(3).

### Discussion

We examine the propriety of a departure from the GSR, regardless of direction, in accordance with the three-pronged test formulated in *United States v. Diaz-Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The first prong requires us to consider whether, taking the reasons for departure stated by the district court at face value, those reasons will as a matter of law justify abandonment of the guidelines. *Id.* On this aspect of the departure calculus, our review is *de novo*. *See United States v. Norflett*, 922 F.2d 50, 52 (1st Cir.1990).

Here, there was but a single pallet on which the downward departure rested: the district court's stated desire, in the interests of fairness, to equalize the sentences of two similarly situated codefend-

ants. The pallet cannot sustain the weight of the cargo placed upon it.

Under the Sentencing Reform Act, a district court may depart from the guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0 (implementing statute); *see generally Sklar*, 920 F.2d at 115; *Diaz–Villafane*, 874 F.2d at 49. We have repeatedly emphasized that, to enable a district court to depart under section 5K2.0, "there must be something 'special' about a given offender, or the accouterments of the crime committed, which distinguishes the case from the mine-run for that offense." *United States v. Aguilar–Pena*, 887 F.2d 347, 350 (1st Cir.1989). In this instance, the court's departure was not based on any special characteristic possessed by Wogan or on any meaningful atypicality in his offense behavior; rather, the court reduced Wogan's sentence below the guideline range solely in an effort to achieve parity between Wogan and his codefendant.[1] We do not think that such a departure can stand.

To be sure, there is some authority indicating that departures may be based on a desire to equalize the sentences of similarly situated defendants in a given case. *See, e.g., United States v. Ray*, 930 F.2d 1368, 1372–73 (9th Cir.1990) (where some codefendants had received mild sentences during period when Ninth Circuit had declared sentencing guidelines unconstitutional, justice required downward departure as to later-sentenced codefendant to avoid disparate treatment), *cert. denied*, —— U.S. ——, 111 S.Ct. 1084, 112 L.Ed.2d 1189 (1991);[2] *United States v. Nelson*, 918 F.2d 1268, 1273 (6th Cir.1990) (district courts "are not precluded *as a matter of law* from departing from the guidelines in order to generally conform one conspirator's sentence to the sentence imposed on his co-conspirators") (emphasis in original);[3] *see also United States v. Daly*, 883 F.2d 313, 319 (4th Cir.1989) (dictum), *cert. denied*, —— U.S. ——, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990). Indeed, it was in reliance on *Daly* that the court below essayed its downward departure.

■ Whatever thoughts may be entertained elsewhere, the legal landscape in this circuit has come into sharp focus since Wogan was sentenced. This court has embraced the well-reasoned decision of the Second Circuit in *United States v. Joyner*, 924 F.2d 454, 459–61 (2d Cir.1991), and has held squarely that a perceived need to equalize sentencing outcomes for similarly situated codefendants, without more, will not permit a departure from a properly calculated guideline sentencing range. *See United States v. Romolo*, 937 F.2d 20, 25 n. 5 (1st Cir.1991) ("discrepancies in comparative outcomes cannot justify downward departures"); *United States v. Carr*, 932 F.2d 67, 72–73 (1st Cir.1991) (same); *cf. United States v. Brown*, 899 F.2d 94, 98 (1st Cir.1990) (district court cannot depart merely to achieve symmetry with earlier nonguidelines sentences).

---

**1.** We find considerable irony in the fact that the district court, having concluded that it erred in finding too modest a drug quantity when sentencing Casale, in effect perpetuated and compounded the error by setting Wogan's sentence as if the drug quantity tabulated at Casale's sentencing was accurate. While we understand the district court's desire to equalize the codefendants' sentences by the only method available—there being no practicable way to increase Casale's sentence under the circumstances—we are constrained to note that, in terms of the sentencing guidelines as elsewhere in the law, "two wrongs seldom make a right." *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 20 (1st Cir.1991).

**2.** The Ninth Circuit cases, however, are somewhat of a motley. *See, e.g., United States v. Enriquez–Munoz*, 906 F.2d 1356, 1359–60 (9th Cir.1990) (upward departure for purposes of equalizing sentences of codefendants is impermissible); *United States v. Changa*, 901 F.2d 741, 744 (9th Cir.1990) (affirming district court's refusal to depart downward to equalize sentences of convicted coconspirators).

**3.** *But see United States v. Parker*, 912 F.2d 156, 158 (6th Cir.1990) (district court may not "depart from the sentencing range established by the guidelines based solely on [a codefendant's] sentence").

The legal provenance of these holdings is, we suggest, impeccable. Congress' objective in enacting sentencing reform legislation was, after all, to eliminate *nationwide* disparity among equivalent offenders. *See Aguilar–Pena,* 887 F.2d at 351–53. Yet, reducing a defendant's sentence below the GSR to equalize his sentence with one previously imposed on a codefendant promotes, rather than reduces, nationwide disparities by "creat[ing] a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country." *Joyner,* 924 F.2d at 460–61. And Congress' chief concern, as we understand it, was to safeguard the macrocosm of the sentencing universe from differential treatment, even if, occasionally, that valued prophylaxis might be attained at the expense of some disparity within a particular microcosm of the sentencing universe. Hence, the thrust toward equalization of sentences within a single case is not, and by itself cannot be, "an aggravating or mitigating circumstance" as that phrase was employed by Congress in enacting 18 U.S.C. § 3553(b) and reiterated by the Sentencing Commission in crafting U.S.S.G. § 5K2.0.

### Conclusion

■ We need go no further. We have held, time and again, that in a multi-panel circuit, prior panel decisions are binding upon newly constituted panels in the absence of supervening authority sufficient to warrant disregard of established precedent. *See, e.g., Jusino v. Zayas,* 875 F.2d 986, 993 (1st Cir.1989); *United States v. Reveron Martinez,* 836 F.2d 684, 687 (1st Cir.1988); *Lacy v. Gardino,* 791 F.2d 980, 985 (1st Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986). So here. *Carr* and its progeny control.

We do pause to add an eschatocol of sorts. While we understand that the court below was motivated by a desire to bring about what it foresaw as a fairer result, all things considered, the principles upon which the guidelines rest cannot "be adulterated by a judge's personal sense of inequity, no matter how well-intentioned the judge may be." *Norflett,* 922 F.2d at 54.

That means, of course, that "[d]issatisfaction with the guidelines or with the range of choices they produce in particular cases does not in itself warrant departure, whether up or down." *Id.; see also Carr,* 932 F.2d at 67; *Aguilar–Pena,* 887 F.2d at 353.

*The defendant's conviction is affirmed, his sentence is vacated, and the cause is remanded for resentencing within the applicable guideline range.*