**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Ray GARZA, Defendant–Appellee.**

No. 92–6390.

United States Court of Appeals,
Tenth Circuit.

Aug. 2, 1993.

Leslie M. Kaestner (Joe Heaton, U.S. Atty., with her on the briefs), Asst. U.S. Atty., Oklahoma City, OK, for appellant.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, OK, for appellee.

Before BRORBY, BARRETT and KELLY, Circuit Judges.

BARRETT, Senior Circuit Judge.

In conjunction with an investigation conducted by the United States Drug Enforcement Administration (DEA), approximately seventy-six pounds of marijuana were recovered from Margaret Gordon's (Gordon) residence in Oklahoma City, Oklahoma. In cooperation with law enforcement officials, Gordon informed investigative agents that her source for the marijuana was a drug organization in Mexico, specifically one headed by an individual known as "Nacho." She also indicated that the marijuana was being delivered to Oklahoma City by Ray Garza (Garza) who worked for Nacho.

On January 7, 1992, Gordon informed law enforcement officials that she had been contacted by Garza who sought collection of monies due and owing on a previous marijuana shipment. During the phone conversation, Garza informed Gordon that one Israel Avila (Avila) would be accompanying him and that the two were staying at a local hotel. Based on this information, DEA agents established surveillance of Garza's hotel room.

Subsequently, Garza and Avila were arrested, and both agreed to cooperate with law enforcement officials. Just as they had informed investigative agents, the next shipment of marijuana was delivered to their hotel room by Elaine Chavez (Chavez). Upon Chavez' arrival, she was arrested and a search of her vehicle yielded 259 pounds of marijuana.

Garza was indicted with co-defendants Avila and Chavez, charged with conspiracy to distribute marijuana and conspiracy to possess with the intent to distribute marijuana; distribution of approximately seventy-six pounds of marijuana; and use of a communication facility, namely a telephone, to facilitate the conspiracy. Pursuant to a plea agreement, Garza plead guilty to a one-count superseding information charging him with interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952(a)(3). A one-count information charging Avila with the same offense was also filed.

Through additional interviews with Garza, law enforcement officials learned that Garza began work with the Mexico drug organization transporting marijuana from Albuquerque, New Mexico, to Oklahoma City. Garza's role ultimately changed to collecting monies owed on past drug sales. Garza had just recruited Avila for possible employment shortly before their arrest.

Based on the extent of Garza's participation in the drug organization, his base offense level pursuant to U.S.S.G. § 2D1.1(c)(8) was 28. He was credited with a three level adjustment for his prompt cooperation with law enforcement officials, and, under level 25, the court calculated Garza's guideline range at 57 to 60 months.

At sentencing, the court determined that there was a disparity between Avila's sentence of 33 months, the minimum within his guideline range, and the potential sentence for Garza. Accordingly, the court announced its intent to depart downward from Garza's calculated guideline range. Following the Government's objection, the court reviewed the pre-sentence report, the Government's brief in opposition to downward departure, Garza's brief in response, and entertained oral argument of counsel. The court ruled that, pursuant to 18 U.S.C. § 3553(a) and (b), a downward departure was justified, and it committed Garza to a term of 41 months followed by a period of three years supervised release. The Government appeals the district court's sua sponte downward departure.

## Analysis

■ The Government contends that the district court erred in sua sponte departing downward from the calculated guideline range based upon a perceived disparity in the sentences of Garza and Avila. "The determination of whether a downward departure is warranted and appropriate is committed to the sound discretion of the trial judge." *United States v. Underwood*, 982 F.2d 426, 430 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 729 (1993) (citing *United States v. Bromberg*, 933 F.2d 895, 897 (10th Cir.1991)).

Here the sentencing court relied on 18 U.S.C. § 3553(a)(6) and (b) to depart from the guideline range:

(a) ... The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

\* \* \* \* \* \*

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; ...

\* \* \* \* \* \*

(b) ... The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements,

**1100**

and official commentary of the Sentencing Commission.

The court found that "the equalization of sentences in companion cases was not a factor the guidelines [took] into account, and thus is proper for consideration on a departure." (Appellant's Appendix, Vol. 1, p. 9). Further, the court noted that Garza and Avila had similar records and were charged with similar conduct, and thus the great disparity between the two sentences warranted equalization. *Id.* at pp. 9–10. In departing downward, the court found Garza more culpable than Avila and therefore sentenced him within a range two levels higher than Avila's range, analogizing the two-level difference to that required under U.S.S.G. section 3B1.1(c).[1] *Id.*

The Government contends that the court was obligated under section 3553(b) to impose a sentence within the guideline range, as there was no showing of a mitigating circumstance of a kind, or to a degree, not adequately considered by the Sentencing Commission which would authorize the downward departure. According to the Government, it is only when the guidelines, the policy statements, or the official commentary of the Sentencing Commission do not account for a particular circumstance that the court may rely on that circumstance as a basis to depart from the applicable sentencing range.

Congress specified that one purpose of the Sentencing Commission was to establish policies and practices which avoid unwarranted sentencing disparities among defendants with similar criminal records found guilty of similar criminal conduct. 28 U.S.C. § 991(b)(1)(B). "The method chosen by Congress to avoid unwarranted disparities is a guideline system that prescribes appropriate sentencing ranges for various combinations of facts concerning an offense and an offender and permits a sentencing judge to depart from the recommended range in unusual circumstances." *United States v. Joyner,* 924

F.2d 454, 460 (2d Cir.1991). "The departure authority permits a sentencing judge to recognize that some factor concerning an individual defendant is of a kind or is present to a degree not adequately considered by the Commission. But neither Congress nor the Commission could have expected that the mere fact of a difference between the applicable guideline range for a defendant than that of his co-defendant would permit a departure, either because the difference was too large or too small. The Congressional objective was to eliminate unwarranted disparities nationwide." *Id.*

It has been observed that "there must be something 'special' about a given offender, or the accouterments of the crime committed, which distinguishes the case from the mine-run for that offense." *United States v. Wogan,* 938 F.2d 1446, 1448 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991). The *Wogan* court held that the reduction of Wogan's sentence solely in an effort to achieve parity between Wogan and his co-defendant was not warranted. "[A] perceived need to equalize sentencing outcomes for similarly situated codefendants, without more, will not permit a departure from a properly calculated guideline sentencing range." *Id.*

In our case, the sentencing court stated that "the equalization of sentences in companion cases was not a factor the guidelines [took] into account, and thus is proper for consideration on a departure." (Appellant's Appendix, Vol. 1, p. 9). However, as *Joyner* has indicated, Congress did consider that sentences of co-defendants may be disparate. Congress chose to avoid unwarranted disparities through a guideline system which considered various facts concerning the offense and the offender. Moreover, in the instant case, the sentencing judge failed to specify any factor concerning Garza which was of a kind or was present to a degree not adequately considered by the Commission.

1. Section 3B1.1 states in part:
   Based on the defendant's role in the offense, increase the offense level as follows:
   \* \* \* \* \* \*
   (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

Nothing was referenced indicating that Garza should be treated differently than a defendant similarly situated. "To reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country." *Wogan*, 938 F.2d at 1449. Congress' objective was to eliminate unwarranted disparities nationwide. *Joyner*, 924 F.2d at 460.

We have previously held that "[w]hile similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Goddard*, 929 F.2d 546, 550 (10th Cir.1991) (disparate sentences were warranted, due in part to the level of active involvement of each of the defendants). *See also United States v. Sardin*, 921 F.2d 1064, 1067 (10th Cir.1990), *cert. denied*, — U.S. —, 113 S.Ct. 348, 121 L.Ed.2d 263 (1992).

In this case, there is no evidence of similarity in the participation, culpability, criminality, and conduct of Garza and Avila. Garza became involved in the Mexico drug organization in early 1991 and had been actively involved for over a year. Avila had been a member of the organization for only a few days. Garza had been involved in delivering or receiving monies due on at least 1,145 pounds of marijuana, while Avila had been present only on one occasion, during the delivery of 250 pounds of marijuana. Based on (1) Garza's conduct and role in this particular offense, (2) the fact that Garza approached the Mexico drug organization and sought employment, (3) Garza's delivery of marijuana for shipment on local freight lines, (4) Garza's delivery of 100 to 150 pounds of marijuana to Oklahoma City on four or five occasions, (5) Garza's collection of monies due and owing for previous marijuana deliveries, and (6) Garza's compensation for this drug activity, Garza was clearly not a minimal participant. Avila, on the other hand, was a minimal participant. He received the benefit of an appropriate adjustment as provided in U.S.S.G. section 3B1.2(a).[2]

■ Under the sentencing guidelines, the policy statements, and the official commentary of the Sentencing Commission, the only disparities which are to be avoided are *unwarranted* disparities. Here, the disparity in sentences is clearly explicable by the facts on the record. *Goddard*, 929 F.2d at 550. Accordingly, this cause is **REMANDED** for resentencing within the applicable guideline range.

---

2. Section 3B1.2 states in part:
   Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.