**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 2 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellant/Cross-
        Appellee,

    v.

LEVONE RAY MADEN,

        Defendant-Appellee/Cross-
        Appellant.

Nos. 96-2125
&    96-2140

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR 94-211 MV)

Richard A. Friedman, Attorney, Appellate Section Criminal Division, Department of
Justice, Washington, D.C. (Tara C. Neda, Assistant United States Attorney, and John J.
Kelly, United States Attorney, District of New Mexico, with him on the briefs), for
Plaintiff-Appellant/Cross-Appellee.

Albert B. Lassen of Lassen & Jaffe, Albuquerque, New Mexico, for Defendant-
Appellee/Cross-Appellant.

Before HENRY, LOGAN and BRISCOE, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Levone Maden was convicted after a jury trial of possession with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(A). The district court sentenced defendant to 240 months imprisonment, departing downward from the guideline range of 360 months to life. The government has appealed, asserting that the district court improperly departed downward on the basis of a sentencing disparity with a codefendant. Defendant cross-appeals, asserting that the district court failed to properly instruct the jury after defendant's objection to testimony that defendant said that he made his living as a drug dealer. We affirm defendant's conviction for the reasons stated hereafter, but hold the district court erred in departing downward below the range established by the sentencing guidelines.

I

We first address defendant's cross-appeal which, if successful, would invalidate his conviction. This case arose when law enforcement officers went to defendant's apartment to execute an arrest warrant on him. When the officers entered the apartment they found defendant and codefendant John Paul Wilbon in the living room. The officers saw in plain view on a dining room hutch two plastic bags containing what appeared to be cocaine base. They also found codefendant Geneva Gallegos hiding in a locked bathroom.

The officers searched defendant incident to the arrest and found that he had significant amounts of cash and some marijuana on his person. After obtaining a warrant

to search the apartment, they found and seized cocaine base packaged in distribution quantities with a total weight of over 450 grams. Both defendant and Gallegos admitted they lived in the apartment. About a day after he was arrested defendant told an FBI agent that he knew the material found in the apartment was crack cocaine.

A grand jury indicted defendant, Wilbon, and Gallegos for possession with intent to distribute more than fifty grams of cocaine base. Wilbon pleaded guilty pursuant to Fed. R. Crim. P. 11(e)(1)(C) to possession with intent to distribute less than five grams of cocaine base, and was sentenced to thirty months pursuant to a plea agreement. Defendant and Gallegos were convicted in a jury trial.

Defendant's argument on appeal addresses a detective's testimony that he had encountered defendant before this arrest and defendant told him that "what he did for a living was he was a drug dealer." IV R. 188. Defense counsel objected without specifying the grounds and the court initially sustained the objection. At a bench conference the government asserted the testimony was an admission of a party opponent and "relevant to go to the--the defendant indicated he was unemployed at the time of his arrest, and there is unexplained wealth that the government is able to show in this apartment." Id. at 188-89; see Fed. R. Evid. 801(d)(2)(A). Defense counsel asked the district court to strike the statement and to instruct the jury to disregard it. Defense counsel asserted that the statement was Fed. R. Evid. 404(b) prior bad act evidence not disclosed to defendant before trial. The district court expressed concern that the witness

not disclose that defendant made the statement during a prior arrest, but then stated that "I'm going to deny the defense objection to strike and instruct the jury to disregard that last statement. Go ahead." IV R. 191. Based on this colloquy defendant asserts that the court sustained its objection and agreed to instruct the jury to disregard the statement, which it never did. But we are satisfied that although the ruling was inartfully worded, the district court denied the defense's objection <u>and</u> its request to instruct the jury to disregard the testimony. That this was also defense counsel's understanding is supported by the fact that defense counsel did not pursue the matter when the district court failed to immediately give a curative instruction.

The district court's jury instructions did reference a statement by defendant which, because the statement was not identified, defendant argues could have confused the jury. The court stated:

> You have heard testimony that the defendant, Levone Maden, made a <u>statement</u>. In determining whether any statement claimed to have been made by a defendant outside of court and after an alleged crime has been committed was knowingly and voluntarily made, you should consider the evidence concerning such a statement with caution and great care and should give such weight to the statement as you believe it deserves under all the circumstances.

IV R. 253 (emphasis added).

Inherent in defendant's assertion that the district court erroneously failed to instruct the jury to disregard the drug dealer testimony, or that its instruction confused the jury, is a claim that the "drug dealer" comment was character evidence not properly

- 4 -

admitted under Fed. R. Evid. 404(a) and (b). Under Fed. R. Evid. 404(b), evidence of prior bad acts may not be admitted "to show bad character or propensity to commit a crime, but may be admitted to prove, among other things, intent or knowledge." United States v. Arias-Montoya, 967 F.2d 708, 709 (1st Cir. 1992).

We note defense counsel did not object to the instruction. Indeed, we cannot determine from the appellate record whether this was an instruction submitted by the prosecution or the defense. The court noted that the only dispute over both parties' proffered jury instructions was over the use of Gallegos' "other name." IV R. 244-45. Thus, we review the instruction only for plain error. The district court was correct in ruling that such a statement is not considered hearsay, because it was made by defendant himself. See Fed. R. Evid. 801(d)(2)(A). But it should have been considered for its admissibility under Rule 404(b).

Some courts have expressed "doubt whether evidence of an occupation or status like 'drug dealer' falls within the realm of 'other crimes, wrongs, or acts' admissible to show knowledge or intent under Rule 404(b)." United States v. Brewer, 1 F.3d 1430, 1435 (4th Cir. 1993) (citing United States v. Reed, 647 F.2d 678, 686 (6th Cir.) (testimony that defendants charged with receiving stolen goods were known burglars or fences not admissible under Fed. R. Evid. 404(b))), cert. denied, 454 U.S. 837, 1037 (1981). But evidence of prior drug transactions can be admissible to prove intent in drug prosecutions. See United States v. Elkins, 732 F.2d 1280, 1286 (6th Cir. 1984) (prior

cocaine deals observed by witness admissible to prove intent in cocaine prosecution). The defense at trial was that "the evidence showed only his presence and perhaps knowledge that a crime was committed, but failed to show that he himself was in possession of the cocaine base." Levone Maden's Brief on Cross-Appeal at 9. Thus, the officer's testimony that defendant told him he was a drug dealer was relevant to a matter at issue in the case--whether defendant had the intent to possess and distribute the cocaine found in his apartment. See, e.g., United States v. Ferrer-Cruz, 899 F.2d 135, 138 (1st Cir. 1990) (evidence of defendant's prior drug possession convictions admissible under Fed. R. Evid. 404(b) to negate his defense that he did not know car he had been driving contained cocaine); United States v. Molinares Charris, 822 F.2d 1213, 1220 (1st Cir. 1987) (evidence of defendants' prior smuggling of controlled substances relevant to disprove claim of "mere presence"), cert. denied, 493 U.S. 890 (1989).

The district court did not explicitly perform the required Fed. R. Evid. 403 balancing. But the colloquy at the time of the objection, in which the court expressed concern that the witness not disclose that defendant made the statement during an arrest, might be construed as weighing possible prejudice. Nevertheless, even if the district court erred in admitting the evidence of the "drug dealer" admission or in not being more specific in its limiting instruction, the error was harmless. When defendant was arrested in the apartment he shared with Gallegos the cocaine base was on a hutch in plain view. He had over $400 in cash in his pocket, and officers found a pager he had rented. After

he was arrested defendant told an officer he knew the substance found was crack cocaine. Further, evidence was admitted at trial without objection from defense counsel that in December 1989 defendant sold crack cocaine to a confidential informant and was later convicted of selling crack cocaine. Given the substantial evidence against defendant the admission of his statement that he was a drug dealer is not reversible error. See United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc).

II

The government's appeal asserts that the district court abused its discretion in departing downward based on the disparity between defendant's guideline range and the sentence the court previously approved for codefendant Wilbon who entered a Rule 11(e)(1)(C) plea bargain to a different offense.

The presentence report calculated defendant's base offense level at 34 based on the 451.3 grams of cocaine base found in his apartment. His criminal history category was VI, and his previous felony convictions for crimes of violence and drug offenses qualified him as a career offender under USSG § 4B1.1. See also 28 U.S.C. § 994(h). The career offender guideline elevated his offense level to 37. There were no applicable adjustments. The presentence report calculated a sentencing range of 360 months to life.

The district court departed downward under 18 U.S.C. § 3553(a) and (b) and USSG § 5K2.0 to remedy the perceived disparity between defendant's guideline range and the thirty-month sentence codefendant Wilbon received under his plea agreement.

The district court departed four levels to a guideline range of 235 to 293 months imprisonment and sentenced defendant to 240 months imprisonment, the mandatory statutory minimum. See 21 U.S.C. § 841(b)(1)(A) (twenty-year mandatory minimum sentence for recidivist drug traffickers). The court stated its reasons for departing downward:

> [P]ursuant to Section 5K2.0 of the U.S. Sentencing Guidelines, the Court finds that there exists a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. The Court notes that codefendant John Paul Wilbon and the Government had a Rule 11(e)(1)(C) Plea Agreement, and as a result, John Paul Wilbon was sentenced to thirty (30) months custody of the Bureau of Prisons. The Court notes that the offense conduct by both John Paul Wilbon and Levone Ray Maden did not result in any role adjustments; therefore, they can be viewed as equally culpable; yet the possible sentence exposure in this case is substantially higher than that of John Paul Wilbon. The Court also notes that this disparity is due to the criminal background of Levone Ray Maden, that a downward departure to the minimum sentence required by 21 U.S.C. § 841(b)(1)(A), which is twenty (20) years, is the appropriate sentence in this case.

I R. doc. 147 at 8; see also V R. 20-21.

We review the district court's determination to depart from the guideline range for an abuse of discretion. Koon v. United States, 116 S. Ct. 2035, 2047 (1996). We review the district court's interpretation of the United States Sentencing Guidelines de novo. See id. The narrow question before us is whether the district court abused its discretion in finding that the disparity was "a mitigating circumstance of a kind or to a degree not

adequately considered by the Sentencing Commission" that would authorize a downward departure. 18 U.S.C. § 3553(b).

In United States v. Garza, 1 F.3d 1098, 1110 (10th Cir.), cert. denied, 510 U.S. 1018 (1993), we stated that "'neither Congress nor the Commission could have expected that the mere fact of a difference between the applicable guideline range for a defendant than that of his codefendant would permit a departure, either because the difference was too large or too small. The Congressional objective was to eliminate unwarranted disparities nationwide.'" Garza, 1 F.3d at 1100 (quoting United States v. Joyner, 924 F.2d 454, 460 (2d Cir. 1991)). "Congress did consider that sentences of co-defendants may be disparate. Congress chose to avoid unwarranted disparities through a guideline system which considered various facts concerning the offense and the offender." Garza, 1 F.3d at 1100.

Although some courts have held that a district court may not depart downward "for the purpose of avoiding unequal treatment of codefendants," see, e.g., United States v. Mejia, 953 F.2d 461, 468 (9th Cir.), cert. denied, 504 U.S. 926 (1992), we need not go so far in this case because we held in Garza that "disparate sentences are allowed where the disparity is explicable by the facts on the record." 1 F.3d at 1101; see also United States v. Contreras, 108 F.3d 1255, 1271 (10th Cir. 1997) (avoiding question whether trial court abused its discretion in departing on disparity because codefendants were not similarly situated).

The disparity here is clearly explicable by several facts to which the district court itself referred: Wilbon entered a plea agreement to a lesser charge; his criminal history, though considerable, was substantially less than defendant's; and defendant supplied the drugs to Wilbon for distribution.[1] See Garza at 1101 (district court abused its discretion in departing downward to avoid disparate sentence because defendant's and codefendant's participation, culpability, criminality, and conduct were not similar). The district court did not identify any factors other than the sentencing disparity that took defendant's case outside the heartland of the guideline range. Thus we see no basis for the district court to depart downward.

We AFFIRM defendant's conviction, but set aside the sentence imposed and REMAND for resentencing within the applicable guideline range.

---

[1] Although Wilbon initially was charged with the same crime as defendant, the government entered into a plea agreement with Wilbon under Fed. R. Crim. P. 11(e)(1)(C). Wilbon agreed to cooperate and to plead guilty to an information charging a reduced offense--possession with intent to distribute less than five grams of crack cocaine--and the government agreed to a sentence of 30 months imprisonment. See Brief for the United States Add. B (Wilbon plea agreement). Without the plea agreement for a 30-month sentence Wilbon's presentence report calculated a sentencing range of 135 to 168 months based on an offense level of 31 and a criminal history category of III. The district court exercised its discretion to accept the plea agreement and sentenced him to 30 months imprisonment. The court stated that it was satisfied that "the agreed sentence departs from the applicable guideline range for justifiable reasons." I R. doc. 133 at 7.