F I L E D
United States Court of Appeals
Tenth Circuit

NOV 1 1999

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RAFAEL SIFUENTES,

Defendant - Appellant.

No. 98-6146

(D.C. No. CR-97-152-C)

(W.D. Okla.)

**ORDER AND JUDGMENT***

Before **TACHA**, **McKAY**, and **MURPHY**, Circuit Judges.

This case was originally set for oral argument before this panel on May 14, 1999. On April 19, 1999, Defendant-Appellant filed a motion to waive oral argument and submit the case on the briefs. After examining the briefs and appellate record, this panel determined that oral argument would not materially assist the decisional process. Accordingly, we granted the motion and ordered the case to be submitted on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(A)(2).

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Rafael Sifuentes appeals his conviction of conspiracy to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Defendant, along with seventeen coconspirators, was indicted in a seventy-count indictment arising out of a multi-ton marijuana importation and distribution ring. He was indicted and convicted on count 1, conspiracy to possess with intent to distribute marijuana, and he was tried with Rolando Samaniego who was charged with thirty-one counts, including conspiracy to possess with intent to distribute marijuana. At sentencing, the court calculated a guideline range for Defendant of 210 to 262 months, which was based on a total offense level of 37 (base offense level of 34 plus a three-level enhancement for his role as a manager), and criminal history category I. The court sentenced him to 210 months' imprisonment followed by a five-year term of supervised release. Defendant raises six issues on appeal, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

**I.**

Defendant first claims that the court erred in refusing to sever his trial from Mr. Samaniego's trial. We review the denial of a defendant's motion to sever for an abuse of discretion. See United States v. Morales, 108 F.3d 1213, 1219 (10th Cir. 1997); United States v. Lopez, 100 F.3d 113, 119 (10th Cir. 1996). To show an abuse of discretion, the defendant bears the heavy burden of showing that

"actual prejudice resulted from the denial [of severance]." Morales, 108 F.3d at 1219; see also Zafiro v. United States, 506 U.S. 534, 539 (1993) (discussing examples of prejudice).

Specifically, Defendant asserts that the spillover of evidence from Mr. Samaniego's trial denied him a fair trial. He explains that out of 1,084 pages of transcript, sixteen witness, and numerous video and telephone tapes making up the government's evidence he is not seen or heard on the video and telephone tapes and "is mentioned [in] less than 100 pages of testimony." Appellant's Reply Br. at 2. Defendant therefore claims that the massive amount of evidence presented against Mr. Samaniego prejudiced him in such a way that the jury could have based its verdict only on guilt by association. See Appellant's Br. at 7.

As an initial matter, we note that Defendant was properly joined for trial pursuant to Fed. R. Crim. P. 8(b). This rule, which permits the joinder of two or more defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses," Fed. R. Crim. P. 8(b), "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." United States v. Hopkinson, 631 F.2d 665, 668 (10th Cir. 1980). The evidence at trial revealed that Defendant was involved with his codefendant and coconspirators in a common scheme or plan to possess and distribute marijuana. Thus, the joinder of Defendant was in

accordance with Rule 8(b).

Under Fed. R. Crim. P. 14, a district court may grant a severance of defendants' trials if it appears that the joinder will result in prejudice to a defendant. In ruling on a motion for severance, the district court must "'weigh the prejudice resulting from a joint trial of codefendants against the expense and inconvenience of separate trials.'" Morales, 108 F.3d at 1219 (quoting United States v. Cardall, 885 F.2d 656, 668 (10th Cir. 1989)). A mere allegation that the defendant would have a better chance of acquittal in a separate trial or a complaint that the "spillover effect" from evidence against a codefendant prejudiced the moving party is insufficient to warrant severance. Id. A district court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539.

Having examined Defendant's claim of prejudice, we do not believe that the evidence admitted against Mr. Samaniego either denied Defendant a fair trial or prevented the jury from making a reliable judgment about Defendant's guilt or innocence. See id. The evidence at trial revealed that Defendant was involved with several coconspirators, including Mr. Samaniego and his brother Elmer Samaniego, Maria Juana Valle, Jeffrey Earl Mosby, Matthew John Fernandez, and

-4-

numerous other individuals in the distribution and transportation of marijuana. In particular, much of the testimony of Mr. Mosby and Ms. Valle reflected that Defendant and Mr. Samaniego worked together on many occasions, unloading marijuana, weighing it, and packaging it for distribution. Thus, while the evidence against Defendant necessarily overlapped and was intertwined with evidence against his codefendant Mr. Samaniego, the trial only involved two defendants. Although Mr. Samaniego was tried on thirty-one counts, as compared to the single count on which Defendant was tried, these multiple charges were not complex and concerned only the transportation, possession, and distribution of marijuana. Cf. id. (noting complex cases with many defendants result in increased risk of prejudice). We think the jury could distinguish between defendants in these kinds of circumstances and weigh the evidence accordingly. We therefore conclude that Defendant has not met his burden of showing actual prejudice.

While this court unanimously agreed that the district court improperly admitted the telephone record summaries as to Mr. Samaniego, see United States v. Samaniego, 187 F.3d 1222, 1224, 1226 (Tacha, J., dissenting) (10th Cir. 1999), we do not think this error prejudiced Defendant for two reasons. First, Defendant does not argue that the summaries were improperly admitted or prejudiced him. Second, the FBI agent, Mark D. Seyler, clearly testified that Defendant's

-5-

connection to the telephone-record summaries was limited to calls made to his father's garage in Texas. See R., Vol. 7 at 605-06, 611. Defendant's counsel vigorously cross-examined Agent Seyler on this point. Not only is the relation between Defendant and the telephone summaries minuscule but, according to the testimony of Agent Seyler, Defendant was not involved in any of the phone records relating to the conspiracy. As a result, the jury easily could have distinguished between Defendant and Mr. Samaniego with respect to this otherwise troublesome evidence. Given the considerable discretion afforded the district court under Rule 14, we cannot say that it abused its discretion in denying the motion to sever.

## II.

Defendant also asserts that his conviction was improper because it was obtained though testimony of codefendants and unindicted coconspirators that violated 18 U.S.C. § 201(c)(2). Defendant's argument is that the testimony procured from cooperating witnesses in return for leniency should have been suppressed. However, we are bound by this court's recent en banc decision in United States v. Singleton, 165 F.3d 1297 (10th Cir.), cert. denied, __ U.S. __ , 119 S. Ct. 2371 (1999), rejecting precisely that argument.

**III.**

Defendant contends that the government's evidence was insufficient to convict him. In reviewing a challenge to the sufficiency of the evidence, we review the record de novo, viewing both direct and circumstantial evidence and the reasonable inferences therefrom in the light most favorable to the government to determine if a reasonable jury could find the defendant guilty of all elements of the crime beyond a reasonable doubt. See United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996). Inferences drawn by the jury "must be more than speculation and conjecture in order to be reasonable," United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997), and we do not second-guess the jury's credibility determinations. See id.

To obtain a conviction under the drug conspiracy statute, 21 U.S.C. § 846, the government need not prove an overt act. See United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994). Instead, the government must prove that "the defendant knew at least the essential objectives of the conspiracy and knowingly and voluntarily became a part of it." Id. In fact, we recently stated that

> [t]he jury may infer an agreement constituting a conspiracy [under § 846] from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose. Furthermore, the jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy. The defendant's participation in or connection to the conspiracy need only be slight, so long as sufficient evidence exists to establish the defendant's participation beyond a

-7-

reasonable doubt.

United States v. Johnston, 146 F.3d 785, 789 (10th Cir. 1998) (quotation marks and citations omitted), cert. denied, 119 S. Ct. 839 (1999).

In this case, the government presented four witnesses who tied Defendant to the conspiracy, FBI Agent Seyler and three coconspirators. The most damaging evidence against Defendant comes from the coconspirator testimony. Defendant, however, claims that his knowing several coconspirators, including Mr. Samaniego, does not translate into participation in the conspiracy. He also contends that because the prosecution could not produce physical evidence connecting him to the charged conspiracy and could not corroborate the testimony of his coconspirators a rational jury lacked sufficient evidence to convict him.

Ms. Valle, who pleaded guilty to one count of making her residence available for the unlawful storage of approximately 700 pounds of marijuana, testified that Defendant came to her house with Mr. Samaniego on several occasions "to help [Mr. Samaniego] weigh and distribute the marijuana." R., Vol. 5 at 18. After identifying Defendant in the courtroom, Ms. Valle testified that Defendant would stay at her house sometimes when the marijuana was being stashed there. Ms. Valle explained that she had seen marijuana being delivered in a truck to her house and that, while she never observed Mr. Samaniego or Defendant actually distribute or weigh marijuana because she would leave her

-8-

house when they were working, she understood that Defendant was at her house to help Mr. Samaniego. The jury could have reasonably inferred from Ms. Valle's testimony that Defendant participated in the conspiracy to possess with the intent to distribute marijuana.

Mr. Mosby, who pleaded guilty to conspiracy to distribute marijuana, testified that he drove vehicles to transport 500 to 600 pounds of marijuana per trip for Mr. Samaniego, his brother, and "Rafael." Mr. Mosby identified "Rafael" as Defendant and explained how Defendant initially became involved in the distribution ring by driving vehicles which had been offered as payment for marijuana to Mr. Samaniego from Oklahoma City to Texas. Mr. Mosby further testified that Defendant sometimes helped him and Mr. Samaniego unload the marijuana from a van into Mr. Mosby's home where it was stored and weighed; that Defendant helped weigh the marijuana, distribute it to Oklahoma City customers such as Mr. Fernandez, and count the money at Mr. Mosby's house; and that Defendant stayed at Mr. Mosby's house during the weighing and distribution of the marijuana. His testimony also implicated Defendant in the smuggling of large quantities of marijuana across the border. Significantly, Mr. Mosby testified that after Mr. Samaniego and his brother were arrested in February 1997 Defendant took over the operation of bringing marijuana into Oklahoma City. He stated that from March 1997 to July 1997, Defendant

organized the delivery and distribution of approximately ten loads of marijuana, each of which contained between 300 and 500 pounds and was delivered in a semi truck by a man known as "Papa Smurf."

Another drug dealer implicated in the conspiracy, Mr. Fernandez, purchased marijuana from Mr. Samaniego from 1994 until Mr. Samaniego's arrest in February 1997. He testified that he and other individuals traded vehicles to Mr. Samaniego for marijuana when they had no money and that in 1996 Defendant drove some of those vehicles from Oklahoma City to Texas for Mr. Samaniego. According to Mr. Fernandez, the vehicles were stored at Mr. Mosby's house or at a house belonging to Ms. Valle, known also as "Nena," until Defendant and the other drivers arrived to pick them up. He also testified that in 1997 he traded Mr. Samaniego cattle for marijuana and that Defendant picked up the cattle after Mr. Samaniego was arrested. Mr. Fernandez identified Defendant in the courtroom, testifying that he saw Defendant three times at Mr. Mosby's house when Defendant was picking up cars. More importantly, Mr. Fernandez stated that after Mr. Samaniego's arrest he bought marijuana from Defendant on at least three occasions, for a total of 200 pounds.

A criminal conviction may be upheld solely on the uncorroborated testimony of a coconspirator if the testimony is not incredible or insubstantial. See United States v. McIntyre, 997 F.2d 687, 708 (10th Cir. 1993). FBI agent

Seyler testified that Defendant was not captured on surveillance or telephone tapes, nor was he was in any motel records relating to the conspiracy, but we believe that the testimony of the three coconspirators overwhelming links Defendant to the conspiracy and shows that he was an integral member sufficient to support the jury's conviction. The testimony of all three coconspirators was substantial and their credibility was vigorously challenged at trial. Defense counsel strenuously questioned their motives to testify favorably to the government, but the jury apparently determined that one or all were credible. That assessment is committed exclusively to the finder of fact, and, as noted above, we may not reweigh the credibility of witnesses. See Yoakam, 116 F.3d at 1349.

In sum, viewing the evidence in a light most favorable to the government, the trial testimony revealed that Defendant was involved in the conspiracy to possess with intent to distribute marijuana by transporting both marijuana and vehicles constituting payment for marijuana, by assisting in the weighing, packaging, and distribution of marijuana, and by selling marijuana. We hold that this evidence was sufficient for a jury to find Defendant guilty of the charged conspiracy beyond a reasonable doubt.

**IV.**

-11-

Defendant also raises three challenges to his sentence. First, Defendant claims that the court improperly enhanced his sentence as a manager or supervisor of five or more participants in the offense. We review the district court's factual findings supporting a sentence enhancement for clear error and the application of those facts to the Sentencing Guidelines de novo. See United States v. Valdez-Arieta, 127 F.3d 1267, 1270 (10th Cir. 1997).

Under United States Sentencing Guidelines § 3B1.1, a defendant's sentence may be adjusted upward various levels depending on the nature of his or her role in the offense. In order to impose a three-level enhancement under § 3B1.1(b), the sentencing court must find by a preponderance of the evidence that the defendant managed or supervised a criminal activity which involved five or more participants or *was otherwise extensive*. See U.S.S.G. § 3B1.1(b). "[F]or a defendant to receive an adjustment under § 3B1.1(b) for his role as a manger or supervisor, the defendant must have managed or supervised at least one other participant." United States v. Johnson, 4 F.3d 904, 917 (10th Cir. 1993) (citation and quotation marks omitted). In addition, the Guidelines list several factors that a sentencing court should take into account in determining whether a defendant's role in the offense qualifies for an enhancement under § 3B1.1. These include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and

scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4). The burden of persuasion is on the government, as the party seeking to increase the defendant's sentence, to establish the factual basis for any enhancement by a preponderance of the evidence. See United States v. Torres, 53 F.3d 1129, 1142 (10th Cir. 1995).

As a threshold issue, it is not entirely clear from the record whether Defendant properly preserved this issue for appeal. In his memorandum objecting to the presentence report, Defendant does not specifically object to the three-level enhancement under U.S.S.G. § 3B1.1. See R., Vol. 1, Doc. 330. At sentencing, the district court indicated that Defendant objected to "the offense conduct, the amount of marijuana, and then he request[ed] a downward departure." Id., Vol. 11 at 3. Assuming that Defendant's objection to the offense conduct included an objection to the presentence report's finding that he acted as a supervisor or manager and because both parties briefed this issue on appeal, we will construe it as properly preserved for appeal.

At sentencing, the district court decided that the trial testimony satisfied the government's burden of proof on all sentencing matters. It therefore refused to hear additional evidence on this issue and adopted the findings of the presentence report. See id. at 3-4. The presentence report found that Defendant "was a manager or supervisor of criminal activity that involved five or more participants

and was otherwise extensive." Id., Vol. 2 at 7.  It also found that Defendant oversaw the marijuana which was brought into Oklahoma after Mr. Samaniego's arrest in February 1997 and that Defendant supervised numerous individuals including "Papa Smurf," Mr. Mosby, Mr. Fernandez, Pete Ford, and Jose Gamez. Defendant claims that there is no evidence linking "Papa Smurf," Pete Ford, or Jose Gamez to him and there is no evidence that he managed or supervised Mr. Mosby or Mr. Fernandez.

At trial, Mr. Mosby testified that Defendant operated the organization distributing marijuana in Oklahoma City after Mr. Samaniego was arrested.  See id., Vol. 8 at 714-15.  Mr. Mosby explained that Defendant would notify him that a load was en route, that approximately ten loads were delivered by "Papa Smurf" to Mr. Mosby's residence, that once Defendant arrived he and Mr. Mosby would weigh and package the marijuana, and that Defendant distributed it.  This testimony shows that Defendant exercised some decision making authority with respect to the marijuana scheme and possessed a heightened degree of organizing or planning the transportation and distribution of marijuana after Mr. Samaniego was arrested.  It is also reasonable to infer from this testimony that Defendant exercised some decision making authority or control over Mr. Mosby and "Papa Smurf," thereby qualifying as a supervisor or manager under § 3B1.1(b).  See Johnson, 4 F.3d at 917.

-14-

Additionally, Mr. Fernandez testified that after Mr. Samaniego's arrest he purchased marijuana three times from Defendant in the same manner that he had purchased from Mr. Samaniego. He stated that from February to May 1997 he was fronted marijuana and later paid Defendant in cash. He also testified that "Papa Smurf" was delivering the marijuana for Defendant at that time. See R., Vol. 9 at 997. Although Mr. Fernandez' testimony does not necessarily show that Defendant exercised control over Mr. Fernandez, the jury could reasonably infer that Defendant played a significant role in the distribution of marijuana after Mr. Samaniego's arrest and that Defendant exercised some control over "Papa Smurf."

The record does not show that Defendant exercised any control or decision making authority over Mr. Ford and Mr. Gamez. Nevertheless, the element requiring that the criminal activity involve five or more participants or be otherwise extensive is satisfied because Mr. Fernandez' testimony demonstrates that Mr. Fernandez and "Papa Smurf" were involved in the criminal activity, and, moreover, the record as a whole undisputedly shows that the criminal activity also involved, among others, Mr. Samaniego, his brother Elmer, Mr. Mosby, and Ms. Valle. For these reasons, we hold that the district court did not err in enhancing Defendant's sentence three levels under § 3B1.1(b).

**V.**

-15-

Defendant also challenges the court's determination that he was not entitled to a downward departure based on the disparity of sentences between himself and other defendants. He asserts that the district court did not fairly consider the evidence in light of 18 U.S.C. § 3553(a)(6), which requires sentencing courts to avoid unwarranted sentencing disparities. We review the court's decision for an abuse of discretion.[1] See United States v. Massey, 48 F.3d 1560, 1570 (10th Cir. 1995).

Although 18 U.S.C. § 3553(a)(6) mandates that courts avoid unwanted sentencing disparities, the purpose of this rule is to "eliminate unwarranted [sentence] disparities nationwide," not between codefendants. See United States v. Blackwell, 127 F.3d 947, 952 (10th Cir. 1997); United States v. Garza, 1 F.3d 1098, 1101 (10th Cir. 1993). Except for his codefendant Mr. Samaniego, the nine coconspirators to whom Defendant compares his sentence all entered plea agreements with the United States. Sentences which are dissimilar because some were obtained by a plea bargain do not justify a departure. In fact, a court may not reduce a defendant's sentence on the mere basis that a codefendant who

---

[1]To the extent that Defendant challenges the court's *refusal* to depart downward, it is well established that we do not have jurisdiction to review a district court's discretionary refusal to depart downward unless it appears from the record that the sentencing court erroneously believed the Guidelines did not permit a downward departure. See United States v. Castillo, 140 F.3d 874, 887-88 (10th Cir. 1998); United States v. Nelson, 54 F.3d 1540, 1544 (10th Cir. 1995).

engaged in similar conduct but agreed to plead guilty to lesser charges received a lighter sentence.  See United States v. Contreras, 108 F.3d 1255, 1271-72 (10th Cir.), cert. denied, __ U.S. __ , 118 S. Ct. 116 (1997).  The court therefore properly refused to depart on this basis.

The court also found that Defendant, "at least at the end of the conspiracy, was in a substantially different position than the others that [the court had] sentenced so far."  R., Vol. 11 at 5.  "[W]hile similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is explicable by the facts on the record."  Contreras, 108 F.3d at 1271.

Additionally, the Sentencing Guidelines specify that a defendant's age and family ties are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."  U.S.S.G. §§ 5H1.1, 5H1.6.  Thus, the court did not abuse its discretion in refusing to depart downward on these bases. While criminal history is relevant to determining the appropriate sentence, see id. §§ 4A1.1, 5H1.8, there is no showing that the court abused its discretion by sentencing Defendant to the minimum amount specified in the guideline range for Defendant's criminal history category I.  The court's refusal to depart on the basis that Defendant did not personally profit was not an abuse of discretion, especially where the court found that the record showed profit.

## VI.

Finally, Defendant claims that the court did not properly calculate the amount of drugs for which he was held accountable at sentencing. "We review the district court's calculation [of drug quantity] as a finding of fact which we will uphold unless clearly erroneous." United States v. Green, 175 F.3d 822, 837 (10th Cir. 1999).

The government bears the burden of establishing by a preponderance of the evidence the quantity of drugs for which the defendant is responsible. See id. at 836-37. As noted above, the district court adopted what it characterized as the conservative findings of the presentence report, which attributed 10,860 pounds of marijuana to Defendant out of the twelve tons or 24,000 pounds of marijuana alleged in the conspiracy. See R., Vol. 2 at 7; Vol. 11 at 3. Of this amount, the presentence report found that Defendant assisted in or managed the transportation of 4,200 pounds into Oklahoma between early 1995 and September 1995; 680 pounds in September 1995; 3,500 pounds between March and June 1996; 1,700 pounds between September 1995 and February 1997; and 780 pounds after February 1997. Defendant argues that neither the amounts seized nor the testimony at trial supports the court's finding that Defendant was responsible for this amount.

Having thoroughly reviewed the record, we conclude that Defendant's

arguments have no merit.  To the extent that Defendant argues that the evidence supporting the drug quantity is insufficient because it comes from a coconspirator, this court has affirmed sentences relying on coconspirator testimony.  See United States v. Beaulieu, 893 F.2d 1177, 1179-80 (10th Cir. 1990) (affirming sentencing court's reliance on the testimony, in a separate trial, of defendant's coconspirating brothers because it had a sufficient indicia of reliability).  The Sentencing Guidelines require that when any factor used to compute sentencing is in dispute, the information ultimately relied upon by the sentencing court must have "sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3(a).  Additionally, it is not necessary that the quantity of drugs for which Defendant was charged or held accountable at sentencing are seized and presented as evidence.  See United States v. Ruiz-Castro, 92 F.3d 1519, 1534 (10th Cir. 1996) (stating that when drugs underlying conviction are not seized, sentencing court may rely on estimate of drug quantity to establish defendant's guideline offense level so long as information relied on has some basis of support in the record).

Here, the challenged evidence possesses several such indicia of reliability. First, the record clearly establishes that Ms. Valle, Mr. Mosby, and Mr. Fernandez knew and identified Defendant as the same Rafael Sifuentes who was involved in the operation and that they had personal knowledge of the events at issue.

Second, there is no evidence that the conspirators' statements were coerced. Third, much of Mr. Mosby's and Mr. Fernandez's testimony was detailed as to amounts and dates and corroborated the other's testimony. Fourth, because each of the coconspirator's statements tends to incriminate the speaker, they can be said to be against his or her penal interest. See United States v. Gomez, 810 F.2d 947, 954 & n.8 (10th Cir. 1987). Based on the principle that "[t]he credibility of a witness whose testimony is relied upon at sentencing is for the sentencing court to analyze," Sloan, 65 F.3d at 865, and because the testimony of these coconspirators possessed a sufficient indicia of reliability, the district court did not err in relying on their testimony at sentencing.

The trial testimony of Ms. Valle, Mr. Mosby, and Mr. Fernandez supports the court's drug quantity determination. Specifically, trial testimony establishes that several hundred pounds of marijuana were delivered by Defendant and Mr. Samaniego to Ms. Valle's residence in September 1995. Additionally, Mr. Mosby testified that from January to September 1995, he transported approximately ten loads of marijuana for Defendant and Mr. Samaniego with an average load of 600 pounds. See R., Vol. 7 at 673-74. This testimony accounts for 6,000 pounds of marijuana attributable to Defendant. Mr. Mosby also testified that after September 1995, Defendant was involved in weekly or bi-weekly transportation and distribution of marijuana in "[f]our-door

-20-

Oldsmobile[s]" with under 100 pounds per load.  Id., Vol. 8 at 702-04.  The record indicates that this practice lasted until Mr. Samaniego was arrested in February 1997.  Calculating these figures conservatively at eighty pounds per load with two loads per month for sixteen months, 2,560 pounds are attributable to Defendant, over 800 pounds more than the 1700 pounds calculated by the presentence report.  Mr. Mosby testified that Defendant organized the delivery of approximately ten loads of marijuana at 300 to 500 pounds per load from March 1997 through mid-July 1997.  See id. at 714-15.  Estimated conservatively, this constitutes an additional 3,000 pounds of marijuana which is attributable to Defendant.  In light of these figures which are supported by testimony in the record, we are not persuaded that the court clearly erred in calculating the drug quantity attributable to Defendant for purposes of sentencing him.

Defendant's conviction and sentence are AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge