# United States Court of Appeals
## For the First Circuit

No. 03-1918

UNITED STATES,

Appellee,

v.

JOEL PADILLA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Selya, Circuit Judge.

George F. Gormley and Christie M. Charles on brief for the appellant.
Michael J. Sullivan, United States Attorney, and Virginia M. Vander Jagt, Assistant U.S. Attorney, on brief for appellee.

December 23, 2004

**Per Curiam.**  Following the conviction of defendant-appellant Joel Padilla for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), the district court sentenced him to imprisonment and a term of supervised release.  On appeal, Padilla advances three claims, one of which has merit and, under existing circuit precedent, justifies modification of his sentence.  The other two claims lack merit.  We consider the three claims sequentially.

## Denial of Motion to Dismiss

Padilla contends that the district court erred in denying his motion to dismiss on Commerce Clause grounds.  That motion was based on his reading of the decisions in United States v. Lopez, 514 U.S. 549 (1995), and United States v. Emerson, 270 F.3d 203 (5th Cir. 2001), cert. denied, 536 U.S. 907 (2002).  We are not free to revisit the Lopez claim because this court already has rejected it in prior cases.  See, e.g., United States v. Colon Osorio, 360 F.3d 48, 53 (1st Cir. 2004).

We also reject Padilla's claim that Emerson provides a basis for dismissal on Commerce Clause grounds.  In doing so, we adopt the rationale of the court that spawned the Emerson decision.  See United States v. Darrington, 351 F.3d 632, 634 (5th Cir. 2003) (rejecting Emerson challenge in the context of a section 922(g)(1) prosecution), cert. denied, 124 S. Ct. 2429 (2004).

## Refusal to Give Jury Instruction

Padilla claims that the district court abused its discretion when it declined to give a requested instruction addressing whether the gun he possessed — which lacked a firing pin assembly and magazine — was a "firearm" within the meaning of the statute of conviction. See 18 U.S.C. § 921(a)(3) (defining the term). We discern no abuse of discretion.

The short of the matter is that the law amply justifies the instruction actually given by the lower court. See, e.g., United States v. Brown, 117 F.3d 353, 355 (7th Cir. 1997) (construing the corresponding sentencing guideline definition and collecting cases). Padilla has cited no relevant legal authority in support of a contrary position.

## Delegation of Sentencing Authority

On appeal, Padilla asserts for the first time that the district court erred when it allowed the probation officer to determine the number of drug tests he must undergo during his supervised release term. The government confesses error; it concedes that this was an improper delegation of judicial authority. See United States v. Meléndez-Santana, 353 F.3d 93, 103, 106 (1st Cir. 2003) (construing 18 U.S.C. § 3583(d)). It nonetheless suggests that we need not correct the unpreserved error because it neither constitutes a miscarriage of justice nor seriously affects the integrity of the proceedings.

This argument is foreclosed by our decision in Meléndez-Santana, in which a panel of this court corrected the same kind of unpreserved error without conducting the usual plain error review. See id. at 106 (vacating drug testing condition and remanding for resentencing because 18 U.S.C. § 3583(d) "requires courts to determine the maximum number of drug tests to be performed"); see also Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004) (explaining that in a multi-panel circuit, newly constituted panels are bound by prior panel decisions); United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991) (same). The fact that there were multiple errors in Meléndez-Santana, making resentencing necessary in any event, is not sufficient to distinguish that decision.

In the alternative, the government invites us to limit the number of drug tests to the minimum (three) required by 18 U.S.C. § 3583(d). To this end, it cites our recent decisions in United States v. Tulloch, 380 F.3d 8, 10 & n.1 (1st Cir. 2004) (per curiam), and United States v. Lewandowski, 372 F.3d 470, 471 (1st Cir. 2004) (per curiam). Those decisions are inapposite here, and, thus, we decline the invitation.

In Lewandowski, we construed a supervised release condition mandating "at least" three drug tests to require only three tests. See id. There, however, the district court had not expressly delegated to the probation officer the power to decide

-4-

whether to administer more tests.  Id.  We nonetheless adopted a limiting construction in order to resolve an ambiguity in the court's order and ensure that it could not be interpreted to contain an implied delegation of such authority.  Id.

Tulloch is distinguishable for a different reason. There, we directed the district court to amend one defendant's supervised release condition, which mandated only a single drug test, to conform to the statutory requirement that no fewer than three tests be performed.  See Tulloch, 380 F.3d at 10 n.1.  With regard to the other defendant, we instructed the court to conform its written judgment to its previously announced oral judgment (which set the number of drug tests at three).  See id.  The case at hand does not share the central characteristics of either Lewandowski or Tulloch.

Of course, Padilla has not objected to the government's suggestion that we adopt a limiting construction here, and, conceivably, that might represent a reasonable and efficient way to correct an express misdelegation of this kind.  But that judgment should be made on the ground, as it were, by the sentencing court. On this record, which indicates that Padilla regularly used marijuana for some period of time prior to his arrest for the offense of conviction, we prefer to let the sentencing court decide how to rectify the error.  Accordingly, we vacate the challenged condition and remand to the district court for further proceedings.

If it so chooses, the court may amend its sentencing judgment to require three drug tests or, after holding a new hearing at which Padilla would have the right to appear with counsel, may specify some higher maximum number of drug tests.

**We vacate the sentence to the extent it improperly delegates the district court's authority to determine the maximum number of drug tests required during the appellant's supervised release term**. **We remand to the district court for further action consistent with this opinion**. **In all other respects, we affirm the conviction and sentence**.

— Concurring Opinions Follow —

**CAMPBELL**, <u>Senior Circuit Judge</u> **and SELYA**, <u>Circuit Judge</u>, **concurring in the judgment**. We agree that <u>United States</u> v. <u>Meléndez-Santana</u>, 353 F.3d 93 (1st Cir. 2003), controls the disposition of this case and that, under its principal holding, an improper delegation of the authority to set certain drug-testing conditions occurred. <u>See</u> <u>id.</u> at 106. We do not question the soundness of that holding. We write separately, however, to express our discomfiture with the approach that the <u>Meléndez-Santana</u> panel took in determining what consequences attended the delegation error.

Although the <u>Meléndez-Santana</u> panel gave lip service to plain error review, it vacated the challenged portion of the judgment upon the finding of error simpliciter, without undertaking any further analysis. <u>See</u> <u>id.</u> In so doing, the panel effectively treated the trial court's mistake as one of "the limited class of structural errors" that warrant correction regardless of other considerations. <u>United States</u> v. <u>Cotton</u>, 535 U.S. 625, 632 (2002) (internal quotation marks omitted).

In our view, that approach — which portends automatic reversal of every delegation error — is incorrect. A finding of structural error assumes the existence of a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." <u>Arizona</u> v. <u>Fulminante</u>, 499 U.S. 279, 310 (1991); <u>see</u> <u>also</u> <u>United States</u> v. <u>Perez-Ruiz</u>, 353

-7-

F.3d 1, 17 (1st Cir. 2003). And some (perhaps most) structural errors deserve careful, individualized attention. The Supreme Court recently stated that, even with respect to preserved errors, only "certain structural errors undermining the fairness of a criminal proceeding as a whole . . . require[] reversal without regard to the mistake's effect on the proceeding." United States v. Dominguez Benitez, 124 S. Ct. 2333, 2339 (2004) (emphasis supplied). As that passage indicates, the sub-category of "automatic reversal" errors has been reserved for the most pervasive and debilitating constitutional deprivations, such as a total withholding of the right to counsel at trial, a denial of the right to self-representation at trial, and the specter of a biased judge presiding over a case. See Fulminante, 499 U.S. at 309-10 (collecting cases). Such errors affect "[t]he entire conduct of the trial from beginning to end." Id. at 309.

In contrast, a delegation error of the kind at issue here (and in Meléndez-Santana) affects only a single aspect (drug testing on supervised release) of a single phase (sentencing) of a criminal proceeding. Such a bevue, although serious, simply does not belong in the select company of structural errors. Cf. Cotton, 535 U.S. at 632-33 (finding that, in the context of sentencing, a particular Apprendi error did not sink to the level of a structural defect); Perez-Ruiz, 353 F.3d at 17 (similar). Because the delegation error neither infects the criminal proceeding as a whole

-8-

nor implicates its fundamental fairness, such an error is non-structural.  This means that, even when preserved, relief for such an error must be "tied in some way to prejudicial effect, and the standard phrased as 'error that affects substantial rights,' used in [Criminal] Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding." Dominguez Benitez, 124 S. Ct. at 2339.

Here, as in Meléndez-Santana, the defendant failed to object at the time of sentencing to the improper delegation of judicial authority.  Hence, this non-structural error arguably was waived and, if so, it cannot be resurrected on appeal. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) ("A party waives a right when he intentionally relinquishes or abandons it.").  Even were we to take the view most favorable to the defendant and assume that his procedural default at sentencing was the result of oversight or inadvertence, the delegation error would have to be regarded as forfeited and, as such, would engender plain

error review.[1]  See id.; United States v. Vazquez-Molina, ___ F.3d ___, ___ (1st Cir. 2004) [No. 03-2655, slip op. at 7-8].

The plain error standard of review presents a formidable barrier to a defaulting party.  To survive plain error review, a litigant must demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001); accord United States v. Olano, 507 U.S. 725, 732 (1993).  The Meléndez-Santana panel opted for automatic reversal and abjured any application of this four-part algorithm.  Thus we are constrained by that precedent to forgo its application here.  See United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991) (explaining that in a multi-panel circuit, newly constituted panels are bound by prior panel decisions).[2]

---

[1]Even if the unpreserved delegation error were structural (a proposition that we reject), plain error review would still apply. See Johnson v. United States, 520 U.S. 461, 466 (1997) (holding that Criminal Rule 52(b), requiring the application of plain error analysis to forfeited claims, governs direct appeals from criminal judgments premised upon unpreserved structural errors); United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 47 n.5 (1st Cir. 2004) (relying on Johnson in noting that "[e]ven if this were a structural error, [the defendant] would still not be entitled to 'automatic reversal' because he failed to preserve his objection").

[2]While the Wogan rule admits of a few modest exceptions, see Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995), none applies here.

-10-

In sum, we deem ourselves bound, on the authority of Meléndez-Santana, to join in the opinion vacating the challenged drug-testing order. Were we at liberty to undertake full-blown plain error review, however, we doubt very much that Padilla could prevail; the drug-testing order here at issue appears neither to affect the defendant's substantial rights nor to impugn the integrity of the proceedings below.[3] Because this is so and because we believe, with all due respect, that Meléndez-Santana is wrongly decided both with regard to its treatment of the delegation error as structural and with regard to its conclusion that such errors warrant automatic reversal, we write separately.

We add, moreover, that the problem we have encountered here is likely to be a recurrent one. Equally as important, the question of which errors are structural and which are not is one of great salience in the criminal law. We would welcome an opportunity to have the full court address this issue and we urge the government to give serious consideration to filing a petition for en banc review. Unless and until this aspect of the Meléndez-Santana decision is corrected, however, we must concur in the judgment automatically vacating the challenged condition and remanding for resentencing.

**— Second concurring opinion follows —**

---

[3]On much the same basis, we doubt that the discerned error in Meléndez-Santana could have withstood full-blown application of the test for plain error.

**TORRUELLA**, <u>Circuit Judge</u>, **concurring**. Although I believe that <u>Meléndez-Santana</u> was correctly decided, I write separately to address some of my brethren's discomfiture about the structural error rationale and plain error review in that case.

As we noted in <u>Meléndez-Santana</u>, "Article III of the Constitution vests responsibility for resolving cases and controversies with the courts. . . . [T]his responsibility requires 'both the appearance and the reality of control by Article III judges over the interpretation, declaration, and application of federal law' to maintain 'the essential, constitutional role of the judiciary.'" 353 F.3d at 101 (citing <u>Pacemaker Diagnostic Clinic of Am., Inc.</u> v. <u>Instromedix, Inc.</u>, 725 F.2d 537, 544 (9th Cir. 1984)(Kennedy, J.)). An "improvident delegation" of judicial authority to a probation officer can erode the judiciary's "essential role"; thus, separation of powers forbids courts from delegating their Article III responsibilities. <u>Id.</u> Although this "general principle does not . . . prohibit courts from using nonjudicial officers to support judicial functions," courts must "retain[] and exercise[] ultimate responsibility." <u>Id.</u> (internal citations omitted). We therefore held that the court improvidently delegated its judicial function in <u>Meléndez-Santana</u> because, instead of simply charging the probation officer with managing the administrative details of defendant's drug treatment, the court delegated its judicial function of deciding whether defendant had

-12-

to undergo treatment.  Id. at 101-02.  We also held that given the clear Congressional mandate of 18 U.S.C. § 3583(d), the court plainly erred in delegating to the probation officer the discretion to order an unlimited number of drug tests.  That statute "requires courts to determine the maximum number of drug tests to be performed beyond the statutory minimum of three, with probation officers permitted to decide the number of tests to be performed within the range established by the court."  Id. at 106.

Although my brethren agree with Meléndez-Santana's principal holding -- that the district court in that case improperly delegated its authority to set certain drug testing conditions -- they are chagrined by the court's approach.  That is, they fault the court for finding "structural error" and for giving "lip service to plain error review . . . without undertaking any further analysis."

However, if my brethren agree with Meléndez-Santana's holding -- that Section 3583 clearly imposes on the courts the duty to determine the maximum number of drug tests to be performed -- then the statutory grant to the court must be read as exclusive because "the imposition of a sentence, including any terms of probation or supervised release, is a core judicial function." United States v. Johnson, 48 F.3d 806, 808 (4th Cir. 1995); see also Ex parte United States, 242 U.S. 27, 41 (1916) (imposition of punishment is a judicial function); Whitehead v. United States, 155

-13-

F.2d 460, 462 (6th Cir. 1946) ("[f]ixing the terms and conditions of probation is a judicial act which may not be delegated"), cert. denied, 329 U.S. 747 (1946). Unlike my brethren, I believe that delegating core sentencing decisions, like the one at issue here, infects the criminal proceeding as a whole and implicates its fundamental fairness. See, e.g., United States v. Mohammad, 53 F.3d 1426, 1439 (7th Cir. 1995) (stating that the delegation of a "serious sentencing decision from a judicial officer to another deprives the defendant of a substantial right" and constitutes a "serious structural defect" affecting the integrity of judicial proceedings). In the context of determining the manner in which restitution is to be paid, for example, a majority of our sister courts have prohibited the delegation of core judicial functions to probation officers. See United States v. Porter, 41 F.3d 68 (2nd Cir. 1994) (sentencing court cannot delegate decisions as to the scheduling and size of restitution installment payments); United States v. Graham, 72 F.3d 352, 357 (3d Cir. 1995) (district court "improperly delegated to the probation officer the determination of the timing of the restitution installment payments"); United States v. Johnson, 48 F.3d 806, 809 (4th Cir. 1995) ("making decisions about the amount of restitution . . . is a judicial function and therefore is non-delegable"); United States v. Albro, 32 F.3d 173 (5th Cir. 1994) (although a court is free to receive and consider recommendations from probation officer, the court itself must

-14-

designate the timing and amount of payments); United States v. Gio, 7 F.3d 1279, 1292-93 (7th Cir. 1993) (district court may not, after fixing the amount of restitution, delegate ultimate authority for determining amounts of installments to probation officer); United States v. McGlothlin, 249 F.3d 783, 785 (8th Cir. 2001) (district court must set the manner of payments and length of time over which restitution payments shall be made); United States v. Overholt, 307 F.3d 1231, 1255 (10th Cir. 2002) (delegation to the Bureau of Prisons and probation officer authority to set payment schedule of restitution is "improper and constitutes plain error").

Under the same analysis, and contrary to my brethren's views, I believe that similar "improvident delegation" of a sentencing decision is plainly erroneous per se. That is, allowing a federal court to delegate its Article III responsibilities, especially core sentencing decisions like the one at issue here, both affects a "defendant's substantial rights" and "seriously impairs the fairness, integrity, or public reputation of judicial proceedings." See, e.g., United States v. Pandiello, 184 F.3d 682, 688 (7th Cir. 1999) (permitting a judge to delegate authority over a "core sentencing decision . . . deprives the defendant of a substantial right and constitutes a serious structural defect affecting the integrity of the judicial proceedings") (internal quotation marks omitted); Albro, 32 F.3d at 174 n. 1 (concluding that "the unauthorized delegation of sentencing authority from an

Article III judicial officer to a non-Article III official affects substantial rights and constitutes plain error" in the context of restitution payments); Overholt, 307 F.3d at 1255 (holding that delegation to probation officer "is improper and constitutes plain error").

In sum, I believe that Meléndez-Santana was correctly decided. Delegating core sentencing functions, such as the one at issue here, erodes the judiciary's role under Article III and, as such, constitutes plain error by violating defendant's substantial rights and affecting the reputation of judicial proceedings.