# United States Court of Appeals
## For the First Circuit

No. 03-1918

UNITED STATES OF AMERICA,
Appellee,

v.

JOEL PADILLA,
Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Chief Judge,
Campbell, Senior Circuit Judge,
Torruella, Selya, Lynch, Lipez and Howard, Circuit Judges.

Christie M. Charles, with whom George F. Gormley and George F. Gormley, P.C. were on brief, for appellant.
John A. Drennan, Attorney, Appellate Section, Criminal Division, United States Department of Justice, with whom Michael J. Sullivan, United States Attorney, and Virginia M. Vander Jagt, Assistant United States Attorney, were on brief, for appellee.

OPINION EN BANC

July 25, 2005

**SELYA**, **Circuit Judge**.  After a jury convicted defendant-appellant Joel Padilla on a charge of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), the district court imposed, as part of his sentence, a term of supervised release.  As a condition of that term, the court ordered that Padilla submit to no fewer than three drug tests, see 18 U.S.C. § 3583(d), and delegated to the probation officer the authority to determine the maximum number of tests to be administered.  Padilla lodged no contemporaneous objection.

On appeal, a panel of this court affirmed Padilla's conviction but vacated the disputed supervised release condition. United States v. Padilla, 393 F.3d 256, 259 (1st Cir. 2004) (Padilla I) (per curiam).  The panel concluded that the supervised release condition, as framed, granted the probation officer unbridled discretion to determine the maximum number of drug tests and that, therefore, it constituted an improper delegation of judicial authority.  Id. at 258 (relying on United States v. Meléndez-Santana, 353 F.3d 93, 103, 106 (1st Cir. 2003)).  Despite the fact that this claim of error was raised for the first time on appeal, the panel vacated the disputed supervised release condition and remanded for resentencing without engaging in conventional plain error review.  Id. at 258-59.  That decision was dictated by Meléndez-Santana's treatment of a virtually identical error.  See id. at 258 (citing Meléndez-Santana, 353 F.3d at 106); see also

-2-

United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991) ("We have held, time and again, that in a multi-panel circuit, prior panel decisions are binding upon newly constituted panels in the absence of supervening authority sufficient to warrant disregard of established precedent.").

Two members of the panel advocated that the en banc court reexamine that portion of the Meléndez-Santana opinion that required vacation of the disputed supervised release condition without resort to conventional plain error analysis. See Padilla I, 393 F.3d at 259, 261 (Campbell and Selya, JJ., concurring). Subsequently, a majority of the judges of this court in active service voted, sua sponte, to withdraw the panel opinion in relevant part and rehear en banc "the questions of whether, to what extent, and in what manner plain-error review applies to improper delegations of sentencing authority of the type" that had occurred in Padilla I. United States v. Padilla, 403 F.3d 780, 780 (1st Cir. 2005) (Padilla II) (order granting rehearing en banc).

We have received supplemental briefs and heard oral argument. We now overrule that portion of the panel opinion in Meléndez-Santana that requires automatic reversal for delegation errors, hold that conventional plain error principles must be applied in such cases, proceed to analyze the delegation error here under those principles, and conclude that despite the delegation error, Padilla's sentence may stand.

# I.

## Background

In Meléndez-Santana, a panel of this court examined the scope of the authority that a district court may entrust to a probation officer with respect to the imposition of drug-testing conditions during terms of supervised release. By statute:

> The court shall . . . order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance.

18 U.S.C. § 3583(d).

In Meléndez-Santana, the district court had delegated to the probation officer the authority to order, at his discretion, drug tests beyond the minimum number (three) set by the foregoing statute. 353 F.3d at 102. On appeal, the panel held that the statutory clause "as determined by the court" signifies "that the court, not the probation officer, must decide how many tests a defendant should be forced to undergo." Id. at 103. The panel added, however, that:

> This responsibility does not mean that the court has to specify the exact number of tests to be performed. Consistent with the statutory language, it may specify a range, allowing probation officers to exercise discretion on the number of drug tests to be performed within that range.

Id. Thus, it determined that the district court had erred in imposing the particular drug-testing condition because, by "vest[ing] the probation officer with the discretion to order an unlimited number of drug tests," id., it had improperly delegated its judicial authority, id. at 106.

The defendant in Meléndez-Santana had failed to raise any objection to the drug-testing condition before the lower court. Id. at 102. Although the panel acknowledged that the claimed error had been forfeited, it did not engage in conventional plain error analysis but, rather, seemed to treat the delegation error as requiring automatic reversal. See id. at 106.

The delegation error noted in Meléndez-Santana proved to be a recurrent one. Padilla's case illustrates the point. The district court sentenced him to a 110-month incarcerative term, followed by a three-year supervised release period. At the disposition hearing, the court delineated the following condition of supervised release:

> He must submit to such drug treatment and testing as the probation office deems appropriate. This can go beyond the minimal one drug test within 15 days of release and two periodic drugs tests thereafter, but is designed to permit the probation officer to make judgments about drug testing in Mr. Padilla's case and drug treatment if they believe that it is appropriate.

The court incorporated these instructions into the written judgment, which stated:

-5-

> The defendant shall participate in a substance abuse treatment program, including testing, as directed by the U.S. Probation Officer, and the defendant shall submit to drug testing as directed by the U.S. Probation Officer.

United States v. Padilla, No. 1:02-CR-10266 (D. Mass. June 10, 2003) (unpublished).

Padilla did not raise any objection to the drug-testing condition in the district court. On appeal, however, that error moved front and center. The panel determined that the sentencing court, by failing to cap the number of drug tests that the probation officer could mandate, had violated section 3583(d). See Padilla I, 393 F.3d at 258. The government, conceding error, urged the panel to leave the sentence intact on the ground that the error neither affected Padilla's substantial rights nor impugned the integrity of the proceedings. The panel concluded that it was bound by the course adopted in Meléndez-Santana and therefore rejected the government's argument. Id.

Two members of the panel wrote separately, however, to "express [their] discomfiture with the approach that the Meléndez-Santana panel took in determining what consequences attended the delegation error." Id. at 259 (Campbell and Selya, JJ., concurring). These judges noted that the practice of automatically vacating a release condition because of a delegation error "effectively treat[s] [such a] mistake as one of 'the limited class of structural errors' that warrant correction regardless of other

-6-

considerations." Id. (quoting United States v. Cotton, 535 U.S. 625, 632 (2002)). Decrying this approach, the concurring judges encouraged en banc review so that the full court could consider the appropriate treatment of unpreserved delegation errors. Id. at 261. In due course, the full court ordered rehearing en banc. Padilla II, 403 F.3d at 780.

## **II.**

## **Analysis**

Padilla presents two arguments in support of his importuning that the drug-testing condition must be vacated. First, he posits that the improper delegation of sentencing authority is a structural error and, thus, requires automatic reversal. Second, he maintains that, in all events, the delegation error satisfies the conventional quadripartite test for plain error review and, on that basis, entitles him to the requested relief. The government, for its part, strives to persuade us that no error occurred. It also argues that unpreserved delegation errors are not structural and do not require automatic reversal. Finally, it asserts that any delegation error that may have transpired does not warrant correction.

We begin by explaining why we rebuff the government's effort to inject a new issue into the case. We then elucidate the standard of review, examine the nature of the unpreserved delegation error, and mull its consequences.

-7-

## A.

## Scope of Review

The government belatedly urges that Meléndez-Santana's principal holding was incorrect because a delegation of the type involved here does not contravene 18 U.S.C. § 3583(d). We summarily reject that exhortation as beyond the proper scope of our review. We briefly explain our rationale.

An appellate court enjoys broad discretionary power to grant rehearing en banc. See W. Pac. R. Corp. v. W. Pac. R. Co., 345 U.S. 247, 250 (1953); see also 28 U.S.C. § 46(c). The scope of en banc review ordinarily is delimited by the order convening the en banc court. See, e.g., United States v. Councilman, 385 F.3d 793, 793 (1st Cir. 2004) (per curiam) (order granting rehearing en banc) (requesting that the litigants address specifically defined issues); United States v. Brown, 263 F.3d 1, 1 (1st Cir. 2001) (per curiam) (order granting rehearing en banc) (enumerating questions of specific concern to the court). Here, the order, by describing the district court's action as an "improper delegation[] of sentencing authority," Padilla II, 403 F.3d at 780, clearly indicated that the question of whether a court errs when it imposes a supervised release condition of the type described in Meléndez-Santana was beyond the scope of the en banc proceeding and that the full court would focus on the narrower question of how an

unpreserved <u>Meléndez-Santana</u> error should be treated on appeal. <u>See</u> <u>id.</u>

Such a circumscription of the issues to be considered is well within the discretion of the en banc court. <u>See</u> 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3981.1 (3d ed. 1999 & Supp. 2005) (noting that "the grant of en banc hearing may be limited in advance to an identified issue"); <u>see</u> <u>also</u> <u>Asherman</u> v. <u>Meachum</u>, 957 F.2d 978, 984 (2d Cir. 1992) (en banc). The government could have asked us to frame the issues on rehearing more broadly. It did not do so.

To be sure, the en banc court has discretion to review all the issues presented by an appeal, even though the order convening the en banc court indicates a more isthmian focus. Here, however, the equities militate strongly against taking such an extraordinary step. After all, the government confessed error in the district court. <u>See</u> <u>Padilla I</u>, 393 F.3d at 258. Moreover, it did not seek either panel rehearing or rehearing en banc in <u>Meléndez-Santana</u>. And, finally, it has conceded <u>Meléndez-Santana</u> error in a myriad of cases since we handed down the <u>Meléndez-Santana</u> decision. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Villafane-Jiminez</u>, ___ F.3d ___, ___ (1st Cir. 2005) [Nos. 03-1230, 03-1231, 03-1340, slip op. at 9]; <u>United States</u> v. <u>Figuereo</u>, 404 F.3d 537, 542 (1st Cir. 2005). That series of actions makes it unseemly for us to reexamine <u>Meléndez-Santana</u>'s finding of error on an eleventh-hour

request.  Cf. Anderson v. Beatrice Foods Co., 900 F.2d 388, 397 (1st Cir. 1990) (opinion on denial of rehearing) (explaining that a party generally is not permitted to raise a new issue for first time on a petition for rehearing); United States v. Hall, 63 F. 472, 475 (1st Cir. 1894) (per curiam) (similar).  Because the order convening the en banc court does not encompass the issue that the government now seeks to explore, we deem it inappropriate to consider that issue.  Consequently, we will not reexamine the Meléndez-Santana court's conclusion that section 3583(d) prohibits a delegation of the type at issue here.

## B.

### Standard of Review

After imposing sentence (including the now-disputed supervised release condition), the district court inquired of both sides whether there was "[a]nything further that we need to take up" before concluding the proceeding.  Although afforded ample opportunity to do so, Padilla voiced no objection to the drug-testing condition.  That default constrains our inquiry.

A court of appeals typically reviews a sentencing court's imposition of a condition of supervised release for abuse of discretion.  See United States v. Brown, 235 F.3d 2, 3 (1st Cir. 2000).  That standard shifts, however, when "the sentencing court affords the defendant an opportunity to object to the condition but the defendant holds his tongue."  Id.  In such circumstances,

appellate review is for plain error.  See id.; see also United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) (explaining that plain error review applies when a party has forfeited a right by failing to assert it in a timely manner).

From the defaulting party's perspective, "[t]he plain error hurdle is high."  United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989).  Under that regime, a reviewing court may set aside a challenged portion of a criminal sentence if, and only if, the appellant succeeds in showing "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Plain error review is not entirely a judge-made construct.  In the first instance, it derives from Fed. R. Crim. P. 52(b), which provides in pertinent part that "[a] plain error that affects substantial rights may be considered although it was not brought to the court's attention."  Properly viewed, then, the plain error test constitutes a mandatory limitation on a federal appellate court's remedial authority.  See United States v. Olano, 507 U.S. 725, 731 (1993) (stating that Rule 52(b) "provides a court of appeals a limited power to correct errors that were forfeited because not timely raised in district court").

Our authority to notice forfeited errors is hedged by the doctrinal elements recognized in Olano. See id. at 732. The appellant must carry the devoir of persuasion as to each of those four elements. See United States v. Vega Molina, 407 F.3d 511, 521 (1st Cir. 2005). Even if he makes the requisite showing on the first three elements, a reviewing court retains plenary discretion not to correct the error if it concludes that the error does not seriously affect the fairness, integrity, or public reputation of the judicial proceedings as a whole. Olano, 507 U.S. at 732.

## C.

## Structural Error

The Supreme Court has recognized the existence of a tiny class of structural errors — errors that may not be found harmless under Fed. R. Crim. P. 52(a) because they deprive a criminal defendant of those basic protections that enable a trial to serve as a vehicle for reliably determining guilt or innocence. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); see also United States v. Perez-Ruiz, 353 F.3d 1, 17 (1st Cir. 2003). Padilla's first argument seeks to grasp this slender lifeline. He asserts that the delegation error here is structural in nature and, thus, is per se reversible. This assertion is doubly flawed.

In the first place, this is not a structural error case at all. A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the

-12-

trial process itself." Fulminante, 499 U.S. at 310. Unlike a garden-variety trial error, a structural error "transcends the criminal process," id. at 311, by depriving a defendant of those "basic protections [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." Rose v. Clark, 478 U.S. 570, 577-78 (1986) (citation omitted).

The category of structural error has been reserved for a "very limited class of cases." Johnson v. United States, 520 U.S. 461, 468 (1997). That class includes only the most pervasive and debilitating errors. Paradigmatic examples are a total withholding of the right to counsel at trial, Gideon v. Wainwright, 372 U.S. 335, 342-43 (1963), a denial of the right of self-representation at trial, McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984), or the specter of a biased judge presiding over a case, Tumey v. Ohio, 273 U.S. 510, 535 (1927). A more recent example is the denial of the right to a jury verdict of guilt beyond a reasonable doubt. See Sullivan v. Louisiana, 508 U.S. 275, 280-82 (1993). The common denominator is that such errors infect "[t]he entire conduct of the trial from beginning to end." Fulminante, 499 U.S. at 309.

In contrast, a delegation error of the type at issue here affects only a single aspect of a single phase of a criminal proceeding — and a tangential aspect at that. This is hardly the

stuff of structural error.  Compare Sullivan, 508 U.S. at 281 (failing to provide a correct reasonable doubt instruction "vitiates all the jury's findings" and therefore constitutes structural error), with Neder v. United States, 527 U.S. 1, 10-11 (1999) (failing to instruct the jury on a single element of an offense is a non-structural error in part because its impact is isolated and does not infect the jury's other conclusions).  The delegation error here neither contaminated the proceeding as a whole nor called into serious question its fundamental fairness. Given its limited reach, the error is non-structural.  Cf., e.g., Perez-Ruiz, 353 F.3d at 17 (finding that a sentencing error, in contravention of the rule in Apprendi v. New Jersey, 530 U.S. 466 (2000), was not a structural error).

In the second place, even if we were to adopt Padilla's taxonomy and classify the delegation error as structural, that classification would not aid his cause.  In Johnson, the Court refuted the very premise on which Padilla's "automatic reversal" assertion rests.  There, the appellant argued that her forfeited challenge fell outside the strictures of Olano because it was "structural."  Johnson, 520 U.S. at 466.  Finding that "the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure," the Court held that forfeited errors, even if structural, are subject to the imperatives of Rule 52(b).  Id.  We reached the same

-14-

conclusion in United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 47 n.5 (1st Cir. 2004).

That ends this aspect of the matter. Creative labeling does not assist Padilla here. On any view of the record, his claim of error is properly considered within the confines of plain error review.[1]

## D.

## Plain Error

Padilla's remaining argument is that this error satisfies the conventional plain error test. Although that test is rigorous, its first two steps present no problem for Padilla: since Meléndez-Santana is the law of this circuit, we must regard delegation of the power to set the maximum number of drug tests as clear and obvious error. See Meléndez-Santana, 353 F.3d at 103-06. The error is not that the district court left the probation officer room to determine the number of drug tests; rather, it is that the

---

[1]The Supreme Court has not yet reached the more sophisticated question of whether a structural error necessarily affects substantial rights, thereby automatically satisfying the third element of the plain error test. See Johnson, 520 U.S. at 469 (declining to address this question); Olano, 507 U.S. at 735 (flagging the issue but declining to consider it). Three courts of appeals have concluded that structural errors, by their nature, satisfy the prejudice prong of the plain error test. See United States v. Recio, 371 F.3d 1093, 1101 (9th Cir. 2004); United States v. Vazquez, 271 F.3d 93, 100 (3d Cir. 2001); United States v. David, 83 F.3d 638, 646-47 (4th Cir. 1996). Similarly, this court has stated that "'structural error' . . . is per se prejudicial." United States v. Mojica-Baez, 229 F.3d 292, 309 (1st Cir. 2000) (dictum). Because the claimed error here is not structural in nature, we need not address that question.

court failed to limit the delegated discretion by capping that number. See id. at 103.

The third step of the plain error pavane requires the appellant to demonstrate that the error affects substantial rights. Duarte, 246 F.3d at 60. The Olano Court explained that "in most cases [this phrase] means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." 507 U.S. at 734. Normally, the appellant must make a particularized showing of prejudicial effect in order to satisfy this element. See United States v. Dominguez Benitez, 124 S. Ct. 2333, 2339 (2004); Olano, 507 U.S. at 735.

In Dominguez Benitez, the Court discussed the "affecting substantial rights" element of the plain error test and noted that the prejudicial effect on the outcome of the proceeding must be "substantial and injurious." 124 S. Ct. at 2339 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In other words, the proponent — the party asserting plain error — must show "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." Id. (alteration in original) (internal quotation marks omitted).

In United States v. Antonakopoulos, 399 F.3d 68 (1st Cir. 2005), this court found the Dominguez Benitez standard applicable to forfeited sentencing errors. Id. at 78-79. In such cases, the appellant, in order to satisfy the prejudice prong, must limn

-16-

circumstances indicating a reasonable probability that the trial court, but for the error, would have imposed a different, more favorable sentence. Id. at 75. That standard governs here.

The case at hand is peculiar in that we are dealing with two unknown variables: the limit the district court would have set on drug tests and the number of tests that the probation officer will demand. It is, therefore, nearly impossible for Padilla to show a reasonable probability that he is worse off because the probation officer, rather than the district court, has the power to determine the maximum number of drug tests. Under these circumstances, we do not see how Padilla can demonstrate that, but for the delegation error, the supervised release condition likely would have been more favorable to him. This, in turn, undercuts his argument that the error should be corrected. See Jones v. United States, 527 U.S. 373, 394-95 (1999) ("Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights.").

We hasten to add that our decision need not rest on this point alone. Even were we to assume, for argument's sake, that Padilla somehow could clear the third-prong hurdle — a dubious proposition at best — the fourth element of the plain error formulation poses an insuperable obstacle. In our view, this delegation error did not in any way impugn the fairness, integrity,

or public reputation of the criminal proceeding as a whole.  Thus, we would decline in any event to exercise our discretion to correct it.  See Duarte, 246 F.3d at 60.

Our rationale is straightforward:  the error in question is simply not of such magnitude or consequence that it would undermine faith in the judicial system were it to stand uncorrected.  This determination recognizes that an appellate court's remedial authority under Rule 52(b) is circumscribed.  See Johnson, 520 U.S. at 466.  A party's best safeguard against judicial error is a contemporaneous objection.  Where, as here, no such objection was interposed, plain error principles cannot be used as a surrogate for the foregone objection.

Seen in that light, it is readily apparent that plain error review is not a panacea for every perceived misstep in the trial process.  The authority to notice plain errors, properly exercised, does not allow a reviewing court to correct "the ordinary backfires — whether or not harmful to a litigant's cause — which may mar a trial record."  United States v. Griffin, 818 F.2d 97, 100 (1st Cir. 1987).  It follows that this power should be employed sparingly to correct grave or consequential errors — those that "seriously affect the fundamental fairness and basic integrity of the proceedings conducted below."  Id.

The error here, considered within the encincture of the case as a whole, is not one of those grave or consequential errors.

The placement of authority to set the maximum number of drug tests in the hands of the judge is a statutory choice; it is neither a matter of constitutional necessity nor a condition essential to the fair administration of justice.[2]  Thus, Article III is implicated only by way of the statutorily prohibited delegation, and to the extent that the statute gives rise to any personal right to an Article III adjudicator, no procedural principle is better settled than that a right may be forfeited by neglecting to assert it in a timeous manner before the nisi prius court.  See Olano, 507 U.S. at 731; Yakus v. United States, 321 U.S. 414, 444 (1944).

To cinch matters, we do not perceive anything fundamentally unfair about the delegation of authority to the probation officer such as occurred in this case.  That error concerns a matter that is incidental to the defendant's sentence as opposed to one of its core components.  Cf. United States v. York, 357 F.3d 14, 21 (1st Cir. 2004) (distinguishing between "significant penological decision[s]," such as the determination of whether a defendant will be subject to polygraph testing on release, and the details related to effectuating such decisions, such as the frequency of the testing).  In the grand scheme of errors — from those that are tolerated as inevitable imperfections

---

[2]Indeed, as the panel noted in Meléndez-Santana, "prior to the enactment of Section 3583(d) as part of the Violent Crime Control and Law Enforcement Act of 1994, probation officers . . . had the authority to establish the maximum number of drug tests to be performed."  353 F.3d at 106 n.13.

-19-

in a judicial system administered by human beings to those that are offensive to the very principles on which that system is based — the error here seems to be solidly nestled within the former category.

In an endeavor to convince us that this delegation error warrants correction, Padilla cites three cases involving forfeited delegation errors in the context of restitution. Those cases fail to alter our conclusion that the instant error does not justify an exercise of our remedial authority.

In two of the three decisions, the court of appeals merely vacated the lower court's restitution order without any explication regarding the applicability of the third and fourth elements of the plain error test. See United States v. Overholt, 307 F.3d 1231, 1256 (10th Cir. 2002); United States v. Albro, 32 F.3d 173, 174 n.1 (5th Cir. 1994) (per curiam).[3] The third decision, United States v. Pandiello, 184 F.3d 682 (7th Cir. 1999), is no more convincing. There, the court concluded that the third and fourth elements of the plain error test were satisfied because a delegation error involving the failure to specify the amount of each restitution payment had occurred. Id. at 688. The court's sole explanation for this conclusion was its characterization of the error as "a serious structural defect." Id. (quoting United

_____

[3]The Albro court made a point of indicating that its finding of plain error was case-specific. 32 F.3d at 174 n.1.

States v. Mohammad, 53 F.3d 1426, 1439 (7th Cir. 1995)). We have rejected that characterization with respect to the delegation error at issue here. See supra Part II(C).

The bottom line is simply this: the cases relied upon by Padilla are out of step with our plain error jurisprudence. For that reason, we decline to follow them.

If more were needed — and we doubt that it is — another reason counseling against the exercise of our corrective discretion is the limited effect of the error. Should the probation officer require an inordinate number of drug tests or otherwise misuse his wrongly delegated authority, the defendant, notwithstanding his original forfeiture, has at least a partial remedy. A specific statute, 18 U.S.C. § 3583(e)(2), permits the district court, on motion, to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." In turn, the Criminal Rules require the court, prior to effecting such a modification, to "hold a hearing, at which the person has the right to counsel."[4] Fed. R. Crim. P. 32.1(c)(1). The advisory committee's 1979 note to Fed. R. Crim. P. 32.1(b) (the section that, prior to the 2002 amendments,

---

[4]Two exceptions apply to this requirement. A hearing is not necessary (i) if the defendant waives the right to one or (ii) if the relief sought is favorable to the defendant, does not extend the term of release or probation, and the government has not objected to the modification after receiving notice and an opportunity to respond. See Fed. R. Crim. P. 32.1(c)(2).

-21-

contained the language that now appears in Rule 32.1(c)) states that "[t]he probationer should have the right to apply to the sentencing court for a clarification or change of conditions"; that "the probationer should be able to obtain resolution of a dispute over an ambiguous term or the meaning of a condition without first having to violate it"; and that in cases of "unreasonableness on the part of the probation officer, the probationer should have recourse to the sentencing court when a condition needs clarification or modification." Fed. R. Crim. P. 32.1 advisory committee's note; see also 3 Charles Alan Wright, Nancy J. King, Susan R. Klein & Sarah N. Welling, Federal Practice and Procedure § 543 (3d ed. 2004 & Supp. 2005). We believe that this remedial regime provides adequate means for redress should the probation officer attempt to ride roughshod.

In the last analysis, Padilla's argument that this court should correct the error boils down to the fact that the error occurred.[5] He fails to make the case that this error, in

_____

[5]Padilla has not argued that the error in question ought to provoke an exercise of this court's supervisory power. We mention this possibility only because of the Supreme Court's decision in Nguyen v. United States, 539 U.S. 69 (2003). There, in a 5-4 decision, the Court held that a Ninth Circuit panel that included a non-Article III judge was improperly constituted under 28 U.S.C. § 292(a) and corrected the forfeited error through an exercise of its supervisory powers. See id. at 74-81. This case is distinguishable in that the mis-delegation of authority does not involve a drastic departure from "the accepted and usual course of judicial proceedings," id. at 74 (internal quotation marks omitted), nor does the error deal with "a statutory provision that embodies a strong policy concerning the proper administration of

comparison to other errors for which relief has been denied on plain error review, is somehow exceptional. To accept his suggestion that we must correct the error simply because section 3583(d) prohibits what the district court did would eviscerate the plain error test.

## III.

## Conclusion

This en banc proceeding is less about the particulars of Padilla's case and more about the need to preserve the integrity of plain error review. The plain error doctrine is premised on the assumption that parties must take responsibility for protecting their legal rights and, accordingly, that only the clearest and most serious of forfeited errors should be corrected on appellate review. See Dominguez Benitez, 124 S. Ct. at 2340; Olano, 507 U.S. at 731; Griffin, 818 F.2d at 100. Courts must be scrupulous in hewing to that line.

So it is here: while a district court commits error when it orders drug testing under section 3583(d) but fails to establish the maximum number of tests that the probation officer can administer, we discern no reason why that sort of bevue warrants correction under the jurisprudence of plain error. See Dominguez Benitez, 124 S. Ct. at 2340 (explaining that the plain error standard, properly administered, "should enforce the policies that

judicial business," id. at 81 (internal quotation marks omitted).

-23-

underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error").

We need go no further.  Because the defendant has not demonstrated that a delegation error of the type committed here satisfies either the third or the fourth elements of the applicable test, we deny the relief requested and affirm his sentence, including the disputed supervised release condition.

**Affirmed**.


— **Separate Opinions Follow** —

**BOUDIN**, <u>Chief Judge</u>, **concurring**. To a novice, the notion that "error" has occurred in the course of a trial or sentencing may be alarming, but anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.

A federal trial can involve myriad issues of substantive law, split-second rulings on points of evidence and procedure, and (in criminal cases) a sentencing regime so complex that it is now the subject of treatises. Many legal questions have no indisputably right answer: often there is no exact precedent; statutory language or prior decisions are ambiguous; competing policy objectives strive for supremacy; and individual district judges within the same district court can and regularly do give different answers to the same question.

Circuit judges have more time to reflect and the advantage of more thorough briefing. Yet there are tables that set forth conflicts on numerous questions as between circuits. <u>See, e.g.</u>, <u>Circuit Split Roundup</u>, 75 Crim. L. Rep. 441, 463-64 (2004) (listing circuit splits "discussed in federal appellate decisions issued in April 2004"). Like trial courts, circuit courts themselves labor under severe constraints due to the volume of cases and the complexity of the laws being administered. Law is

-25-

complex because the world that it regulates is complex, but complexity makes perfection unattainable.

None of this signals any crisis. Many so-called errors have no plausible effect on the outcome of the case, and many more have only the lowest likelihood of affecting the outcome. Evidence is frequently cumulative; jury instructions may pose questions on which the jury's decision is controlled by weighty evidence; and details in sentencing conditions may be of minimal practical importance. For this and other reasons of policy, counsel is expected to object when a judge rules adversely to the client; and objections not presented in a timely manner are ordinarily forfeited. Yakus v. United States, 321 U.S. 414, 444 (1944).

Even if an error has been forfeited, the plain error doctrine still allows reversal on appeal--but only if specific conditions are met. Although the current standard is supplied by the Supreme Court's decision in United States v. Olano, 507 U.S. 725, 732 (1993), the underlying factors would be the same under any common-sense formulation: e.g., the clarity of the error, the likelihood that it affected the result, and concerns about justice (which is not the same thing as a difference in result).

It is in this context of inevitable (but often unimportant) error that one must consider the sentencing mistake in this case, namely, a decision to let the probation officer set the required number of drug tests instead of having the maximum number

-26-

specified by the judge.  Most people would probably think it entirely sensible that a probation officer, an individual familiar with the defendant while on supervised release, be the one to make such judgments in the first instance--subject always, as is the case, to the ability of the district judge to alter the number or to remedy any other unfairness of administration of a condition.

It happens that a governing decision now says that the judge should fix the maximum number, United States v. Melendez-Santana, 353 F.3d 93, 103 (1st Cir. 2003), but that was a change in practice--not a requirement of a law of nature.  Correcting by a remand a later instance of the same mistake, when defense counsel ignored the matter in the district court, may seem a small matter to an appellate judge in the comfort of chambers, but is a waste of time for everyone involved and especially for the district court.

The time of a judge is scarcest of all judicial resources.  Every unnecessary remand is a theft of that time from cases where the dispute really matters-a theft multiplied many times over in situations where (as in Melendez) lawyers often do not bother to object because no one notices or supposes the matter worth correcting.  The dilution of plain error requirements in one case then becomes (as with Melendez) the means or excuse for a further dilution in other cases, inviting a further downward spiral.

It is improbable that even the defendant in this case really cares whether the probation officer or the judge initially sets the maximum number of tests; counsel, at taxpayer expense in most criminal appeals, raise such issues simply because they are there. Counsel is entitled to do so; the real problem begins when judges reward such efforts by seeking to rescue forfeited errors of no importance, encouraging more such claims and more wasted time in the future.

The work of courts is not an academic exercise. See Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). Judges are engaged in getting the world's work done, implementing legal rules fairly but within a framework of settled procedural constraints-- absent which the system could not function. To be inventive in extending prior precedent is a useful capability for a judge; to be practical is a necessity.

**— Dissenting Opinion Follows —**

**LIPEZ, <u>Circuit Judge</u>, with whom TORRUELLA, <u>Circuit Judge</u>, joins, dissenting.** I agree with the majority that the plain error in Padilla's sentence is not structural in nature. However, because I believe that it is meaningless to apply the third step of the plain-error test in these circumstances, and because I would resolve the fourth step in Padilla's favor, I respectfully dissent from the majority's decision to leave the error uncorrected.

## I. The third step (prejudice)

As the majority acknowledges, we are faced with comparing "two unknown variables: the limit the district court would have set on drug tests and the number of tests that the probation officer will demand." <u>Ante</u> at __. In the majority's view, this circumstance makes it "nearly impossible" for Padilla to show prejudice. <u>Id.</u> Actually, the problem is deeper than that.

The plain-error test's third step requires us to assess the probability that the error at issue affected the outcome of the proceeding in which it occurred. To meet the plain-error test, the prejudicial effect on the outcome of the proceeding must be "substantial and injurious." <u>United States</u> v. <u>Dominguez Benitez</u>, 542 U.S. 74, __, 124 S. Ct. 2333, 2339 (2004) (internal quotation marks omitted). Typically, when a defendant comes to us alleging that the district court has committed plain error, we are able to ask meaningful questions: Would the judge or jury still have found the defendant guilty, or would the judge have imposed the same

-29-

sentence, or would the defendant still have entered a guilty plea, if the error had not occurred?  We answer those questions "by viewing such a claim against the entire record. . . .  It is simply not possible for an appellate court to assess the seriousness of the claimed error by any other means." United States v. Young, 470 U.S. 1, 16 (1985).  If we answer those questions "yes," we conclude that there was no prejudice from the error.

Here, however, we cannot ask that kind of question.  This case involves an erroneous delegation of authority to a probation officer.  That delegation error was not a ruling preliminary to a guilty verdict, or the imposition of a period of incarceration, or the acceptance of a guilty plea.  We cannot assess the likelihood that a known outcome would have occurred even without the error.  The error relates only to who imposes a condition of supervised release.  For the purpose of evaluating the significance of the delegation error itself, the probability question that is so critical to the prejudice analysis of plain-error review is meaningless.

If we focus instead on the consequence of the improper delegation of authority (how many drug tests the defendant will be required to submit to during supervised release), the probability question is still meaningless.  The improperly delegated authority has not yet been exercised.  Thus we have two unknowns: the number of drug tests the judge never decided to require, and the number of

drug tests the probation officer has yet to require.  As an appellate court in these circumstances, we are deprived of any meaningful ability to review the plain error for prejudice.  In other words, Padilla's failure to show prejudice results not from any infirmities specific to his case, but from an inherent limitation on our ability to analyze the issue of prejudice.  We are not applying a "test" when the subject of the test has zero chance of passing--and no defendant in Padilla's situation will ever be able to show prejudice.  In effect, the majority applies a per se rule which will always leave this kind of error uncorrected.

The Supreme Court's logic in Sullivan v. Louisiana, 508 U.S. 275 (1993), is instructive here.  In that case, the district court had given the jury an erroneous reasonable-doubt instruction.  Although many constitutional errors are amenable to harmless-error review, see Chapman v. California, 386 U.S. 18, 24 (1967), the Court held that the error in Sullivan was not because "the entire premise of Chapman review is simply absent," Sullivan, 508 U.S. at 280.  The Court explained:

> There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the same verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless.  There is no object, so to speak, upon which harmless-error scrutiny can operate.

Id.

-31-

As I have said, I reject Padilla's characterization of his sentencing error as structural. However, we are faced with a Sullivan-like problem here. Because we are comparing an unknown with an unknown, we have "no object, so to speak, upon which [the prejudice] scrutiny can operate." Id. There are some questions to which no meaningful answer can be given--in other words, where the question's premise simply does not apply. That is the situation here. We are not applying a "test" to facts, as if the outcome might depend on those facts. Thus, the prejudice analysis of plain-error review in a case such as this is simply illusory.

In concluding that this indeterminacy means that Padilla loses on the third step, the majority cites a statement from Jones v. United States: "Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights." 527 U.S. 373, 394-95 (1999). Jones had been convicted of a capital offense and sentenced to death. On appeal, he claimed that an erroneous instruction had led the jury to believe that if it failed to recommend a sentence unanimously (whether life imprisonment or a death sentence), the court would then impose a sentence of less than life. 527 U.S. at 387. The court in Jones knew the outcome of the process affected by the alleged error: that Jones had in fact been sentenced to death. That type of error lends itself to the traditional prejudice analysis of plain-error review, in which

-32-

a court must assess the probability of the same outcome even if the error had not occurred.  The Court engaged in such a probability analysis when it said that

> even assuming that the jurors were confused over the consequences of deadlock, petitioner cannot show the confusion necessarily worked to his detriment.  It is just as likely that the jurors, loath to recommend a lesser sentence, would have compromised on a sentence of life imprisonment as on a death sentence.

Id. at 394-95.  For reasons that I have already explained, that traditional prejudice analysis does not apply to the delegation error at issue in this case.  Here, we do not have the equivalent information: namely, how many drug tests probation will require.  We are, in short, dealing with a different kind of plain-error problem.  Thus the prejudice analysis in Jones has scant relevance to the prejudice issue here.

The government insists, however, that we are not dealing with a different kind of plain-error problem.  It cites two cases which, in its view, demonstrate that even if a decision was made by the wrong person or institution, the Supreme Court nonetheless applies plain-error review as usual.  Those cases are United States v. Cotton, 535 U.S. 625 (2002) (drug quantity omitted from indictment and so decided by judge instead of jury; Court reviewed for plain error); and Johnson v. United States, 520 U.S. 461 (1997) (in prosecution for perjury, the element of materiality was decided by the judge instead of jury; Court reviewed for plain error).  In

each case, the judge made a decision that the jury should have made. The Court approached the claim of error by reviewing the entire record and concluding that, even if the question had been asked correctly of the jury rather than the judge, the outcome would be the same because the evidence was "overwhelming and uncontroverted." Cotton, 535 U.S. at 634; see also Johnson, 520 U.S. at 470 (evidence supporting materiality was "overwhelming"). Those cases did not, however, involve an improper delegation of authority which had never been exercised. They were thus amenable to a traditional kind of plain-error review; they only confirm that we are dealing here with a different kind of error, which necessitates a different approach to plain-error review.

## II.  The fourth step (public reputation of judicial proceedings)

The only meaningful plain-error question when reviewing a claim like Padilla's involves the fourth step: whether the error so "seriously affects the fairness, integrity or public reputation of judicial proceedings," United States v. Olano, 507 U.S. 725, 736 (1993) (internal quotation marks and citation omitted), that it cannot stand. The majority dismisses this error as one "not of such magnitude or consequence that it would undermine faith in the judicial system were it to stand uncorrected." Ante at __. I cannot agree.

-34-

I first note one aspect of the history of this case. In United States v. Meléndez-Santana, 353 F.3d 93 (1st Cir. 2003), where a panel of this court first decided that the delegation error at issue here was plain error, the government did not seek a rehearing by the panel or en banc. Since that case, as the majority describes, the government has repeatedly conceded the error in many cases and agreed to a remand for correction without asking for en banc review of the plain-error determination. See, e.g., United States v. Villafane-Jimenez, 410 F.3d 74, 88 (1st Cir. 2005); United States v. Ayala-Pizarro, 407 F.3d 25, 29 (1st Cir. 2005); United States v. Vega, 398 F.3d 149, 154 (1st Cir. 2005). Even when the original panel in this case explicitly invited the government to seek a rehearing en banc, the government declined to do so. See United States v. Padilla, 393 F.3d 256, 261 (1st Cir. 2004) (Campbell & Selya, JJ., concurring), vacated, 403 F.3d 780 (1st Cir. 2005). At that point, the court sua sponte had to call for a rehearing en banc and order briefing.

As a procedural matter, that call was entirely appropriate. If we think we have made a legal error, we have a responsibility to correct it even if the parties are indifferent. Still, the costs of complying with the Meléndez-Santana rule arguably fell on government prosecutors, who had to go back to court and get the sentencing judge to establish the maximum number of drug tests. When the government displays little interest in

avoiding this burden, it should warn us that our interest in avoiding it for them may be incompatible with the fourth step of plain-error review.

As we have said before, "[t]he 'fairness, integrity or reputation' plain-error standard is a flexible one and depends significantly on the nature of the error, its context, and the facts of the case." United States v. Gandia-Maysonet, 227 F.3d 1, 6 (1st Cir. 2000); see also United States v. Hoyle, 237 F.3d 1, 5 (1st Cir. 2001) (same). This kind of delegation error--which leaves the defendant in an impossible position for showing prejudice, yet which is so easy for the prosecution and trial court to fix--meets that standard.

## A. Sentencing errors are different

The Second Circuit has held that courts have some flexibility in applying the otherwise strict standards of plain-error review when faced with sentencing errors. See United States v. Sofsky, 287 F.3d 122, 125 (2d Cir. 2002). We, in turn, have cited Sofsky for that proposition. See United States v. Cortes-Claudio, 312 F.3d 17, 24 (1st Cir. 2002). One of the principle reasons for Sofsky's conclusion was the relative ease of the burden of correction:

> [N]oticing unobjected-to errors that occur at trial precipitates an entire new trial that could have been avoided by a timely objection, whereas correcting a sentencing error results in, at most, only a remand for resentencing, or, as in this case, for a modification of the allegedly erroneous condition of supervised release.

-36-

287 F.3d at 125. Here, of course, Padilla makes the same modest request for a modification in the conditions of his supervised release, and the same principle applies.

We have demonstrated our fidelity to this principle recently in our treatment of unpreserved Booker error. For instance, in United States v. Antonakopoulos, we began with a classic statement of the third prong. To show prejudice, we said that a defendant must "point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to [him] under the new 'advisory Guidelines' Booker regime." 399 F.3d 68, 75 (1st Cir. 2005). Soon thereafter, we also said in United States v. Heldeman that we were "[g]uided by traditional plain error doctrine." 402 F.3d 220, 224 (1st Cir. 2005). Yet we acknowledged that, due to the special circumstances of unpreserved Booker error, "we are inclined not to be overly demanding as to proof of probability where, either in the existing record or by plausible proffer, there is reasonable indication that the district judge might well have reached a different result under advisory guidelines." Id. We added that,

> [a]fter all, it will be easy enough for the district judge on remand to say no with a minimum expenditure of effort if the sentence imposed under the pre-Booker guidelines regime is also the one that the judge would have imposed under the more relaxed post-Booker framework.

Id.; see also United States v. Wilkerson, 411 F.3d 1, 8 (1st Cir. 2005) (one reason for remand is that "it would be easy enough for [the district judge] to say no with a minimum expenditure of effort"). Although Heldeman did not explicitly consider the fourth step of plain-error review in its analysis, I understand our consideration of the burden of correcting the error as particularly relevant to the fourth step. To the extent that Heldeman did not consider the fourth step at all, it shows that we have been sensitive to context in the application of plain-error doctrine--indeed, quite recently, and in an instance where institutional concerns about the burden of error correction were important to the plain-error analysis.

In short, in the sentencing context, we have been able to adapt traditional plain-error review to unusual circumstances that the doctrine, and the Supreme Court's explication of it, have not anticipated. We continue to cite both Antonakopoulos and Heldeman as our guides in this area of law. See, e.g., United States v. Lewis, 406 F.3d 11, 21 (1st Cir. 2005).

## B. Institutional concerns predominate

We should show that same flexibility here. The fourth step requires us to focus on the larger, institutional consequences of the error (as expressed by the phrase the "public reputation of judicial proceedings"), not only on the consequences of the error for the defendant before us. Here, those institutional concerns

should include the importance of courts following explicit rules that Congress has prescribed.  Of course courts will sometimes go astray,[6] as in this case.  However, when the burden of getting it right is so minimal, the obligation to make the correction is that much greater.  We are not confronted here with the prospect of redoing trials, or plea proceedings, or even sentencing hearings. Instead, at most, the sentencing judge, with input from the prosecution and defense counsel, has to correct the improper delegation of authority to a probation officer and set the maximum number of drug tests.

Congress has said, for reasons that may not be fully apparent to us, that judges rather than probation officers should set the maximum number of drug tests.  We acknowledged that uncertainty about Congress's rationale in Meléndez-Santana itself: "Legislative history does not reveal why Congress chose to go in a different direction" from a policy permitting judges to delegate such decisions.  United States v. Meléndez-Santana, 353 F.3d 93, 106 (1st Cir. 2003).  The majority views Congress's commitment of these kinds of decisions to the courts as merely statutory and, in the final analysis, not particularly important.  I acknowledge that, before 1994, probation officers had the discretion to set the

_____

[6]As I have said, a quick search through our recent cases shows that we are dealing with a common delegation error.  See, e.g., Villafane-Jimenez, 410 F.3d at 88; Ayala-Pizarro, 407 F.3d at 29; Vega, 398 F.3d at 154.

maximum number of drug tests.  Still, Congress has made a decision to alter that practice, and we should respect that choice by correcting the error that undermines it.

With a minimal expenditure of judicial resources, we can show that respect and thereby avoid a misapplication of the plain-error doctrine which, rather than preserving the integrity of plain-error review, repudiates our recent willingness to apply that doctrine flexibly in the sentencing context.  Such flexibility does not threaten to open the floodgates of easy error correction, and burdensome retrials and resentencing, as the majority may fear.  We will retain our ability to distinguish between types of error and the contexts in which they occur.  The integrity of plain-error review does not suffer from its sensible application.

## III. Conclusion

We should not appear to apply the plain-error doctrine when, in truth, we know that defendants are destined for failure. That is not a test, properly speaking--that is a per se rule.  The majority essentially opts for that per se approach and would leave the delegation error at issue here, and all similar errors, uncorrected. Respectfully, that is a mistake.  We should exercise our discretion to correct this error, thereby carrying out a direct Congressional command with a minimal burden on prosecutors and the courts.  The fourth step of plain-error review is designed to

safeguard the reputation of the courts.  Leaving this plain error uncorrected disserves that purpose.